# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **FINESSE WIRELESS LLC,** | |
| Plaintiff, | Civil Action No. 2:21-cv-316-JRG |
| v. | PATENT CASE |
| **AT&T MOBILITY LLC,** | JURY TRIAL DEMANDED |
| Defendant. | |

## MOTION TO EXCLUDE LATE-PRODUCED EVIDENCE AND TO STRIKE CERTAIN OPINIONS OF DEFENDANTS' DAMAGES EXPERT DR. BECKER

**TABLE OF CONTENTS**

I.      Background Regarding Defendants' Late-Produced Discovery ............................. 1

II.     Argument ................................................................................................................ 8

      A.   This Court Should Exclude the Late-Produced Documents and Dr. Becker's Opinions About Them ................................................................................. 8

           1.   Defendants have no valid explanation for their failure to disclose the challenged data in a timely manner ......................................... 9

           2.   Finesse was prejudiced by Defendants' untimely disclosure ..................... 10

           3.   A continuance will not cure Finesse's prejudice ........................................ 12

           4.   The evidence is not critical to Defendants' defense .................................. 12

      B.   This Court Should Strike Dr. Becker's Opinions Premised on Improper Hearsay ................................................................................................................ 13

III.    Conclusion ........................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Factory Mut. Ins. Co. v. Alon USA L.P.*,
705 F.3d 518 (5th Cir. 2013) .................................................................................................13

*Realtime Data LLC v. EchoStar Corp.*,
No. 6:17-cv-00084-JDL, 2018 WL 6266300 (E.D. Tex. Nov. 15, 2018) ..................................9

*Rembrandt Vision Techs. LP v. Johnson & Johnson Vision Care, Inc.*,
725 F.3d 1377 (Fed. Cir. 2013) ................................................................................................9

*Tantivy Comms., Inc. v. Lucent Techs. Inc.*,
2005 WL 2860976 (E.D. Tex. Nov. 1, 2005) ....................................................................10, 12

*Texas A & M Research Found. v. Magna Transp. Inc.*,
338 F.3d 394 (5th Cir. 2003) ....................................................................................................8

*United States Auto. Assoc. v. PNC Bank N.A.*,
No. 2:20-cv-00319-JRG-RSP (E.D. Tex. Apr. 17, 2022) .......................................................11

*ZiiLabs Inc., Ltd. v. Samsung Elecs. Co. Ltd.*,
No. 2:14-cv-00203-JRG-RSP (E.D. Tex. Nov. 2, 2015) .........................................................13

**Other Authorities**

Local Rule CV-26(d)(3)-(5) ............................................................................................................8

Rule 26 .................................................................................................................................8, 9, 12

Rule 37 ...............................................................................................................................9, 13, 15

Rule 37(c)(1) ...................................................................................................................................8

Rule 703 ..................................................................................................................................13, 15

Rules 26(a)&(b) ..............................................................................................................................8

Rules 802, 703, and 403 ...............................................................................................................15

After many months of document production, written discovery, and depositions, fact discovery in this case closed in August 2022. Once Defendants received Finesse's expert reports, however, they decided fact discovery should have gone differently. So they endeavored to pull documents and generate data, never before shared with Finesse, to feed to their damages expert, Dr. Stephen Becker. On the day <u>rebuttal</u> expert reports were due, Dr. Becker rendered an opinion on this new information and Defendants made a document production containing it.

Even apart from Defendants' general obligations under this Court's Rules and the Discovery Order to produce in fact discovery all "relevant" documents, Finesse specifically requested from Defendants the very data they saw fit not to produce until the final round of expert reports, when it suited them. This gave Finesse no opportunity to follow-up on and explore this data during fact discovery (including noting gaps and inquiring about them) and no opportunity to comment on it during the opening round of expert reports. Finesse was forced to scramble during the week of expert depositions and while briefing its dispositive motions to request follow-up data and testing from Defendants, which as of today has not yet been provided by them. Even to the extent that Defendants atone for their sins by making any supplemental data available to Finesse, the harm is already done. Finesse should not be put on its heels this late in the game due to Defendants' inexcusable delays.

This Court should exclude this newly-produced information and should strike those opinions rendered by Dr. Becker that rely on it. As a separate matter, this Court should also strike one opinion that Dr. Becker renders that is based wholly upon inadmissible hearsay.

### I. Background Regarding Defendants' Late-Produced Discovery

This case was originally filed on February 24, 2021, against Defendants AT&T and Verizon (Consol. Case No. 2:21-cv-63-JRG). Plaintiff Finesse alleges that AT&T and Verizon

1

employ certain radios in their wireless networks that suffer from a problem called Passive Intermodulation (PIM); to combat this problem, their radios employ a technique called Passive Intermodulation Cancellation (PIM-C). After Finesse sued AT&T and Verizon, certain of their radio manufacturers, Ericsson and Nokia, intervened. Because of a potential standing issue, Finesse dismissed and then refiled this case on August 23, 2021, and the parties agreed that discovery and other materials generated in the original case could be re-used in the second case. Dkt. 42 ¶12(f). On August 5, 2022, this Court granted a joint motion to dismiss Finesse's allegations that related to Ericsson, leaving AT&T, Verizon, and Nokia as the remaining parties.

Pursuant to ¶3(b) of this Court's standard discovery order, Defendants were under an obligation—even without a formal discovery request—to "produce or permit the inspection of all documents, electronically stored information, and tangible things in the possession, custody, or control of the party that are relevant to the pleaded claims or defenses involved in this action . . . ." Dkt. 42. Nevertheless, as is often the situation in this Court's patent cases, Finesse sent to Defendants a letter specifying a non-exhaustive set of the documents and data that it expected them to provide pursuant to ¶3. Finesse's letter to AT&T demanded, among other things, that AT&T produce documents relevant to various PIM and PIMC-C measurements in their systems:

> All documents concerning the incremental benefit to AT&T and/or its customers of the technologies described in the Patents-in-Suit, including without limitation documents that concern the incremental benefits of filtering, cancelling, and/or reducing interference from passive intermodulation; or measuring, calculating, or utilizing an active IMP, adjustable finite impulse response filter, amplitude control, analog signal, analog-to-digital converter, antenna, bandwidth, baseband, bit stream, cancellation unit, compression curve, control signal, copies of transmitter signals used in generating the cancellation signals, coupler, data stream, decimating filters, digital domain, digital signal, fast search algorithm, filter, high powered amplifier, interference cancellation, interference generating signals, interfering signals, intermodulation cancellation signal, intermodulation product, intermodulation product cancellation signal, nonlinear process for generating the IMPs, nth order cancellation signals, odd order cancellation signals, over-sampling, particular transmitter and receiver locations, passband, passband filters, passive IMP, phase and amplitude adjustment, phase control, PIM estimate function,

power series, radio receiver, received signal, receiver, receiver bandwidth, residual intermodulation interference, sampled stream, sampling unit, signal of interest, source signals, subtractor and estimator units, transmitter, transmitter filter, transmitter filters reducing active IMPs, transmitter output, transmitter signal, and/or transmitter signal set, as those technologies are described in the Asserted Claims.

Ex. 1 (Griffith 7/19/21 Letter, at 14) (emphasis added). AT&T never responded to this letter.

In June 2022, Finesse sent AT&T a second letter with additional requests for data about its network. Ex. 2 (Grinstein 6/22/22 Ltr.). After not hearing from AT&T for several weeks, to close the loop and be sure it would not need to move to compel, Finesse followed-up and asked AT&T to prioritize the production of certain data. Among other things, Finesse requested:



Ex. 3 (Blackburn 7/6/22 email). ▇▇▇▇▇▇▇ is a spreadsheet that reports ▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇; Finesse was thus requesting a broader production of similar data. AT&T understood Finesse's request and responded: ▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 4 (S. Kennedy 7/26/22 email) (emphasis added).

Fact discovery closed on August 15, 2022, Dkt. 106 at 4, and Finesse submitted its expert report on damages from Dr. Coleman Bazelon on August 23, 2022. One month later, on September 23, 2022, Defendants submitted a responsive expert report from Dr. Stephen Becker. At the same time, they made an additional production of documents "bates stamped AT&T_FW_00200948 - AT&T_FW_00200951." Ex. 5 (Gerkin 9/23/22 Production Email).[1]

---

[1] This late-produced evidence consists of large spreadsheets in native format that cannot feasibly be attached to this motion. Finesse can make them available to the Court if it desires.

This motion concerns Dr. Becker's reliance upon, and opinions about, these AT&T late-produced documents to support various of his damages opinions as to AT&T's and Verizon's use of Nokia's infringing equipment, as described below.[2]



The ▮▮▮▮ Data Set – ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 6 (Becker Rep.), at ¶129. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Relying upon AT&T_FW_00200950, Dr. Becker rendered an opinion about ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *E.g.*, Ex. 6, at ¶129. AT&T did not produce AT&T_FW_00200950 until the day it served Dr. Becker's report. Yet the data reflected in AT&T_FW_00200950 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ could have been produced during the fact discovery period: ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 7 (Becker Depo.), at 85:11 to 86:4.

This data should have been produced earlier pursuant to ¶3(c) of the Discovery Order and Finesse's July 2021 request (Ex. 1). Likewise, this information is "additional data like what is in AT&T_FW_0000758" that AT&T agreed to produce in July 2022. Consider, for example, some of the column headers in the narrow AT&T_FW_0000758 data set (timely produced):

---

[2] These documents are relevant to Intervenor Nokia because they concern the Nokia products' operation on the AT&T network. Dr. Becker also applies the AT&T documents to his analysis of Verizon's damages. *E.g.*, Ex. 6, at Exs. 13A, 13B, 13C, & 13D. Accordingly, Finesse will refer to the use of these documents by "Defendants," even though they were produced by AT&T.

4

These column headers, which refer to ███████████████ ███████████████████, were reported for █████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████: ████████████████████████████████████████████████ ████████████████████████████████████████████████ Although the column header naming conventions do not match exactly across data sets ████ ████████████████████████████████████████,[3] it is clear that these ██ data ████████ were available well before the filing of Dr. Becker's expert report. There were consequences to AT&T's failure to gather the ████ data in a timely fashion. ████████████████████████████ Ex. 8 (Taylor 10/6/22 Depo.), at 28:8-25. ████████████████████████████████████████████████ ████████ *Id.* at 29:2-5. ██████████████████████ ████████████████ ████████████████ ████████████████████████████████████████ (it is unclear when, if at all, AT&T has acted to preserve the data after the lawsuit was filed). *Cf. id.*, at 39:6-13 ("... ████████████████████████████████ . . . .")).

The ████ Data Set – ████████████████████████████ ████████████████████████████████████████████.[4] This ████ data was timely produced, and Finesse does not seek its exclusion. However, after Mr. Taylor appeared for his fact deposition,

---

[3] For example, ████████████ are the same column identifying ████████████ ███████.

[4] ████████████████████████ Ex. 16 (Lodekke Depo., at 79:12-18) (AT&T 30(b)(6) witness testified that ██████████████████).

████████████████████████████████████████████████

5

AT&T chose to designate him as an "expert" and re-run those ▮▮▮ tests. AT&T did so despite Mr. Taylor's representation during his "fact" deposition in August 2022 that ▮▮▮ ▮▮▮. Ex. 9 (Taylor 8/15/22 Depo.), at 83:15-21. At his second, "expert" deposition, however, Mr. Taylor testified that ▮▮▮ ▮▮▮, Ex. 8, at 10:9 to 11:2,[5] although Dr. Becker claims that ▮▮▮, Ex. 6, at ¶130. Mr. Taylor further testified that ▮▮▮ ▮▮▮ Ex. 8, at 88:13-17.

The second ▮▮▮ test data, produced at AT&T_FW_00200951, purports to show ▮▮▮ ▮▮▮. Dr. Becker relies upon that data in reaching conclusions abou▮ ▮▮▮. *E.g.*, Ex. 6, at ¶130. At no time during fact discovery did AT&T make available to Finesse its installed radios so that Finesse could conduct its own testing. Finesse did not ask during fact discovery for that access – based upon the ▮▮▮, Finesse saw no need to do so. Had AT&T indicated an intent to re-test those radios *after* fact discovery, however, things would have been different.

▮▮▮ Data Set – During fact discovery, AT&T produced a limited set of data (AT&T_FW_197549) regarding ▮▮▮ ▮▮▮. Apparently, however, this data was not enough for Defendants' expert. So, again, on the day that rebuttal expert reports were due, Defendants produced an additional file, AT&T_FW_200948. As Dr.

---

[5] At his August 2022 deposition, when asked ▮▮▮ Mr. Taylor responded: ▮▮▮ Ex. 9, at 68:5-11. Less than a month later, Mr. Taylor ▮▮▮ test.

Becker explained in his depo, the data produced late in AT&T_FW_200948 was much more extensive and helpful than that which AT&T timely produced in AT&T_FW_197549:



Ex. 7, at 118:13 to 119:22 (emphasis added). Dr. Becker conceded further that the data in 200948 could have been produced earlier:



*Id.* at 120:23 to 121:9.

The ▮▮▮▮ Set – In ¶259 of his report, Dr. Becker argues that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Citing to AT&T_FW_00200949, Dr. Becker writes: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 6, at ¶259 (emphasis added). This representation is incorrect. At the time Dr. Becker signed his report, AT&T had not "produc<u>ed</u>" this data; it was instead produced concurrently with his report, long after fact discovery.

Upon receiving this late-produced data, Finesse became concerned not only about its timeliness but also that it may have been cherry-picked. Thus, after receiving the data for the first time on Friday, September 23, and then taking the time to review it, Finesse requested on Wednesday, September 28, access to a complete set of ▮▮▮ data and also the ability to run

7

its own ▮▮▮▮▮ tests on AT&T's system. Ex. 10 (Griffith 9/28/22 email). On Monday, October 3, Defendants responded that they needed further explanation as to why Finesse needed this additional data. Ex. 11 (Becker 10/3/22 email). The parties thereafter engaged in further back and forth as to what Finesse needed and why. Ex. 12 (Griffith 10/7/22 Email). As of the date of this motion, no further data or testing has been provided to Finesse.

## II. Argument

A.    <u>This Court Should Exclude the Late Documents and Dr. Becker's Opinions About Them</u>

     1.    <u>Legal Standard</u>

Under Rules 26(a)&(b), Defendants were required to produce relevant information and documents to Finesse. Paragraph 3 of this Court's discovery order required Defendants to produce all relevant information without awaiting a formal document request. Dkt. 42. The Local Rules are clear about the scope of "relevance." Among other things, "it is information that is likely to have an influence on or affect the outcome of a claim or defense; it is information that deserves to be considered in the preparation, evaluation, or trial of a claim or defense; and it is information that reasonable and competent counsel would consider reasonably necessary to prepare, evaluate, or try a claim or defense." Local Rule CV-26(d)(3)-(5).

Rule 37(c)(1) provides that "[i]f a party fails to provide information . . . the party is not allowed to use that information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or harmless." In this Circuit, a court considers four factors in determining whether a Rule 26 violation is harmless: (1) the party's explanation, if any, for its failure to disclose the information in a timely manner; (2) the prejudice to the opposing party if the evidence is admitted; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the evidence. *E.g.*, *Texas A & M Research Found. v. Magna Transp. Inc.*, 338 F.3d 394, 402 (5th Cir. 2003). The burden is on the party facing a motion under Rule 37 to prove that its

failure to comply with Rule 26 was substantially justified or harmless. *Rembrandt Vision Techs. LP v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1381 (Fed. Cir. 2013).

    2.    <u>Defendants have no valid explanation for their untimely production</u>

As set forth above, Defendants should have produced the ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ data during the fact discovery period. Even without a formal request for production, Defendants were required to unilaterally provide this information pursuant to ¶3 of the Discovery Order in this case. On top of that, however, Finesse sent correspondence specifically demanding categories of information under which this data fell. Exs. 1-3. Defendants were thus under no illusion that this information was relevant to the case (as evidenced by their own use of it). Yet they sat on it until the time they filed their rebuttal expert reports. And this prejudice is only worsened by Defendants' lack of engagement, thus far, when Finesse has tried to seek answers and obtain complete data sets.

Finesse anticipates that Defendants' excuse for waiting until too late to produce this relevant information will be that they were unaware of its importance until they saw Finesse's damages report, which pursues ▮▮▮▮▮▮▮▮▮▮▮. For multiple reasons, this excuse is an improper "hindsight" attempt to justify their discovery failures. *See Realtime Data LLC v. EchoStar Corp.*, No. 6:17-cv-00084-JDL, 2018 WL 6266300, at *7 (E.D. Tex. Nov. 15, 2018).

First, this data is not information whose importance could only be discerned after Finesse submitted its damages report; it purports to speak to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Such information would be directly relevant to, among other things, *Georgia-Pacific* factor #11: "The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use." As such, this late-produced evidence would have been pertinent to whatever damages model Finesse articulated.

9

Second, Defendants were not truly surprised that Finesse pursued a damages theory based on the value to Defendants of the use of the asserted inventions. After all, Defendants themselves asserted that ████████████████████████████████████████████████. Ex. 7, at 173:12-18. So if Finesse were not to pursue a damages model based on ██████████, what did Defendants expect Finesse's model to look like? During discovery Finesse sought extensive information from Defendants about the capacity of their wireless networks and the incremental costs for additional capacity (*i.e.*, spectrum). Ex. 2. And Finesse asked fact deponents about ████████████. *E.g.*, Ex. 17 (Lauber 8/15/22 Depo.), at 110:9-112:13, 153:20-155:14, 188:3-15. Finesse needed this information only if it were at least exploring a damages theory that related to the economic value of the use of the patented invention in Defendants' networks. And, again, this information was directly responsive to written demands for data made by Finesse. Ex. 1. Defendants should therefore have produced it earlier, regardless of their speculation about how it might have been used in a report. *See Tantivy Comms., Inc. v. Lucent Techs. Inc.*, 2005 WL 2860976, *3 (E.D. Tex. Nov. 1, 2005) (rejecting excuse for late documents that relevance only became clear after plaintiff asserted new infringement theories).

Third, Defendants' attempt to somehow shift the blame to Finesse for some late disclosure of its damages theory is improper. To the contrary, Finesse was under no obligation to articulate its damages model until the time of expert reports, as reflected by ¶3(c) of the Discovery Order: "[T]he disclosure of the computation of damages may be deferred until the time of Expert Disclosures if a party will rely on a damages expert." Dkt. 42. And, perhaps for that reason, Defendants never sought relief over the adequacy of Finesse's damages disclosures.

3. <u>Finesse was prejudiced by Defendants' untimely disclosure</u>

The timing of Defendants' late production of this data proves, by itself, the prejudice experienced by Finesse. By failing to produce the data during fact discovery, Finesse had no

10

opportunity to ask the fact witnesses about it, pursue additional related data, or comment about it in its opening round of expert reports. Moreover, the more extensive is an expert's analysis of late-disclosed information, the more prejudice the opposing party suffers. *United States Auto. Assoc. v. PNC Bank N.A.*, No. 2:20-cv-00319-JRG-RSP (E.D. Tex. Apr. 17, 2022), at 12 ("Although USAA had an opportunity to depose Dr. Bovik, that did not adequately mitigate the prejudice. Here, Dr. Bovik's opinions are more than 'brief.' Dr. Bovik does a substantial analysis on the allegedly [late-disclosed] non-infringing nature of the '419 Patent . . . ."). Here, Dr. Becker discusses the late-disclosed evidence at length; his "substantial" opinions about the evidence are not "brief." *E.g.*, Ex. 6, at ¶¶71–72, 129–132, 259, 264, Exs. SLB-9, SLB-10, SLB-12A to SLB-12D, SLB-13A to SLB-13D.[6] As such, Finesse is prejudiced.

Finesse has sought follow-up discovery from Defendants to determine whether the data that they untimely produced was cherry-picked. As of the date of this brief, no such data has been provided. Even if it eventually is produced, that will be no cure to Finesse's prejudice. As an initial matter, for Defendants to produce more untimely data is hardly an excuse for the original untimely data. Moreover, that Finesse has to scramble to seek this additional data, while simultaneously taking expert depositions, briefing dispositive/*Daubert* motions, and preparing the joint pretrial order is prejudice in and of itself – there is a reason why "fact discovery" is supposed to occur during the "fact discovery" period. Finesse prepared its expert reports and motions based on the current state of fact discovery; if additional discovery is later produced (which should have been produced earlier), Finesse may be forced to redo much of its work.

Separately, Defendants' failure to produce the ▮▮▮▮ data in a timely manner raises a data destruction issue. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 8, at 28:8-25.

---

[6] Which is not to say that striking those opinions will leave Dr. Becker with no opinion. Dr. Becker's expert report contains significant analysis that Finesse does not seek to exclude.

As of today, Defendants have only produced ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Even if they were to pull and produce all available data to them as of the date of this motion, that data may only go back to ▮▮▮▮▮▮▮. Had Defendants timely produced the ▮▮▮ data, at least as of the time of Finesse's letter on July 19, 2021 (Ex. 1), data would exist back to ▮▮▮▮▮. Accordingly, Defendants' untimely production of the ▮▮▮ data prejudiced Finesse by allowing for the destruction of ▮▮▮▮▮▮ worth of such data. Finesse now has no way of testing ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

4. <u>A continuance will not cure Finesse's prejudice</u>

As of the date of the filing of this motion, trial is approximately three months away. Even if this motion were addressed promptly after briefing is complete, it would leave less than two months before trial. There will not be time between then and jury selection to address any prejudice to Finesse. And a continuance would be manifestly unfair to Finesse – Defendants should not be permitted to usurp Finesse's trial date by laying behind the log on discovery, and then sending Finesse on a chase for whatever it can learn about Defendants' late-produced data. *Tantivy*, 2005 WL 2860976 at *4 ("Continuances for discovery misconduct would allow parties to disregard Rule 26 and this Court's Discovery Orders with impunity. Further, granting a continuance would reward [Defendant] for making a tactical decision to ambush [Plaintiff]. This Court will simply not allow lawyers or their clients to lay behind the log and disregard their discovery obligations. Parties have an affirmative obligation in this Court to search for and produce relevant documents early in the case.").

5. <u>The evidence is not critical to Defendants' defense</u>

The final factor in the Rule 37 analysis focuses on the importance of the evidence to the party who seeks to introduce it in an untimely fashion. Of course, in theory Defendants could

argue that any evidence upon which their expert chose to rely is "important" to them. But this evidence is not of <u>critical</u> importance to the Defendants' case. Finesse, after all, is not seeking the wholesale exclusion of Dr. Becker's damages report; only those portions of the report that rely upon the untimely data. For example, although Finesse seeks exclusion of the ▮▮▮▮ data, Defendants can still discuss through ▮▮▮▮▮▮▮▮.

The "importance" factor must also be considered under the totality of the circumstances. No party should be able to introduce critical evidence in an untimely manner merely by arguing that the evidence is too important to be kept out of trial; that would give license to rampant gamesmanship during discovery. On the other hand, if the challenged evidence is vital and the circumstances of its late disclosure are not egregious, then late production might be countenanced. This latter scenario is not the case here, however. As is evidenced by the sheer volume of late discovery that made it into Dr. Becker's report, this was not an inadvertent issue. Defendants waited until after Finesse's expert report to figure out what evidence they wanted to prove their case, and then delayed until the last minute to produce it. *See ZiiLabs Inc., Ltd. v. Samsung Elecs. Co. Ltd.*, No. 2:14-cv-00203-JRG-RSP (E.D. Tex. Nov. 2, 2015), at 4 (striking late-disclosed non-infringing alternatives even though they were "important" to the defendant).

B.      This Court Should Strike Dr. Becker's Opinions Premised on Improper Hearsay

Finesse raises one additional issue with the opinions of Dr. Becker. Under Rule 703, an expert witness may base his opinions on facts or data that he "has been made aware of or personally observed," but the court must exercise a gate-keeping role "to ensure the expert isn't being used as a vehicle for circumventing the rules of evidence." *Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 523–24 (5th Cir. 2013) (internal quotation omitted). "Although expert witnesses are permitted to rely on hearsay to form their opinions, 'their testimony is not a vehicle

by which evidence that is otherwise inadmissible may be introduced.'" *Bianco v. Globus Medical, Inc.*, 30 F.Supp.3d 565, 570 (E.D. Tex. 2014) (citation omitted).

Here, Dr. Becker attempts to value the Finesse inventions by ███████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████. Dr. Becker cites to ████████████████████████ ███████████████████████. *See* Ex. 6, at ¶108 (citing IV_00000015). There is no other written proof that such an offer was made, and ████████████████████████████ ██████████. *See* Ex. 13 (F. Smith 8/3/22 Depo.), at 168:10-13, 171:22-172:8; Ex. 14 (M. Chapman 8/11/22 Depo.), at 107:4-6; Ex. 15 (M. Chapman 8/12/22 Depo.), at 386:17-21, 387:18-22, 388:8-10, 388:15-22, 389:24-390:4, 390:6, 390:14-18.

IV's notes are hearsay and would otherwise be inadmissible at trial. ████████ ███████████████████████████████████████████████████████ ████████████████ ██████████████████████████████████████ ███████████████████████████████████████████████████████ ██████████████████████[7] And the hearsay nature of these notes leads to real issues as to their reliability. ████████████████████████████████████████████████████ ███████████████████████████████████████████████████████

---

[7] Finesse met and conferred about this motion on the afternoon of October 11. Amazingly, immediately after the meeting, Defendants produced a document purporting to be a business records declaration from Intellectual Ventures <u>dated September 20</u> – but the document is not notarized, is not a sworn statement, and does not contain the language required for declarations to qualify under 28 U.S.C. § 1746. This document had never been provided to Finesse (much less timely produced in discovery), violating Rule 902(11). It also had not been produced to Finesse within five days of receipt from IV, violating Paragraph 12(d) of the Discovery Order (Dkt. 42). In any event, the purported declaration does not satisfy any business records standard, in part because there is no indication that the affiant has any personal knowledge regarding the actual notes or even what the alleged "regularly conducted activity" or "regular practice" cited may be.

14

██████████████████? Defendants and Dr. Becker do not know anything about any of these specifics of ████████████████████████████████████████████████████

████████████████████████████████████████. Ex. 7, at 153:13-155:19 ████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████).

Rule 703 of the Federal Rules of Evidence provides that experts can rely on inadmissible evidence, but, if so, "the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Here, the probative value of this hearsay evidence does not substantially outweigh its prejudicial effect. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████ As such, it is a bridge too far for Dr. Becker to base an opinion on this hearsay, which otherwise lacks any indicia of reliability. Under Rules 802, 703, and 403, this Court should exclude IV_00000015 and Dr. Becker's opinions as to it.

### III. Conclusion

This Court should exclude the documents that Defendants produced concurrent with their rebuttal expert reports (AT&T_FW_00200948 through AT&T_FW_00200951), and should also strike references to, and reliance upon, those documents from Dr. Becker's expert report. These references include (but are not limited to) ¶¶71–72, 129–132, 259, 264, Exs. SLB-9, SLB-10, SLB-12A to SLB-12D, SLB-13A to SLB-13D. of his Report. This Court should also strike ¶108 and ¶109 from his Report and all other references to the purported ████████████████████.

DATED: October 11, 2022　　　　　　　　Respectfully submitted,

By:　*/s/ Joseph S. Grinstein*
　　Joseph S. Grinstein – Lead Counsel
　　　　Texas State Bar No. 24002188
　　　　jgrinstein@susmangodfrey.com
　　Shawn Blackburn
　　　　Texas State Bar No. 24089989
　　　　sblackburn@susmangodfrey.com
　　Meng Xi
　　　　California State Bar No. 280099
　　　　mxi@susmangodfrey.com
　　Megan E. Griffith
　　　　New York State Bar No. 5544309
　　　　mgriffith@susmangodfrey.com
　　Bryce T. Barcelo
　　　　Texas State Bar No. 24092081
　　　　bbarcelo@susmangodfrey.com
　　**SUSMAN GODFREY LLP**
　　1000 Louisiana Street, Suite 5100
　　Houston, TX 77002
　　Telephone: (713) 651-9366
　　Facsimile: (713) 654-6666

　　S. Calvin Capshaw
　　　　Texas State Bar No. 03783900
　　　　ccapshaw@capshawlaw.com
　　Elizabeth L. DeRieux
　　　　Texas State Bar No. 05770585
　　　　ederieux@capshawlaw.com
　　**CAPSHAW DERIEUX LLP**
　　114 E. Commerce Ave.
　　Gladewater, TX 75647
　　Telephone (903) 845-5770

　　T. John Ward, Jr.
　　　　Texas State Bar No. 00794818
　　　　jw@wsfirm.com
　　Andrea Fair
　　　　Texas State Bar No. 24078488
　　　　andrea@wsfirm.com
　　Chad Everingham
　　　　Texas State Bar No. 00787447
　　　　ce@wsfirm.com
　　**WARD, SMITH & HILL, PLLC**
　　PO Box 1231

16

>Longview, Texas 75606
>Telephone: (903) 757-6400
>Facsimile: (903) 757-2323
>
>**ATTORNEYS FOR PLAINTIFF**
>**FINESSE WIRELESS, LLC**

### CERTIFICATE OF CONFERENCE

I hereby certify that counsel for Finesse conferred with counsel for Defendants on October 11, 2022. Finesse understands that Defendants oppose the relief sought in this motion.

>By: */s/ Joseph S. Grinstein*
>Joseph S. Grinstein

### CERTIFICATE OF SERVICE

I hereby certify that counsel of record are being served this 11th day of October, 2022, with a copy of this document via email.

>By: */s/ Joseph S. Grinstein*
>Joseph S. Grinstein

### CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is being filed under seal pursuant to the Protective Order entered in this matter.

>By: */s/ Joseph S. Grinstein*
>Joseph S. Grinstein