IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| FINESSE WIRELESS, LLC | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CASE NO. 2:21-CV-00316-JRG |
| | § | (LEAD CASE) |
| AT&T MOBILITY, LLC, | § | |
| | § | CASE NO. 2:21-CV-00317-JRG |
| | § | (MEMBER CASE) |
| Defendant. | § | |
| | § | |
| | § | |
| FINESSE WIRELESS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| CELLCO PARTNERSHIP d/b/a | § | **JURY TRIAL DEMANDED** |
| VERIZON WIRELESS, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| NOKIA OF AMERICA CORPORATION, | § | |
| ERICSSON INC., | § | |
| | § | |
| Intervenors. | § | |
| | § | |

**PLAINTIFF'S MOTION TO STRIKE EXPERT DISCLOSURE AND EXCLUDE
TESTIMONY OF ARNAUD PIERRARD**

Finesse Wireless, LLC ("Finesse") moves to strike the expert disclosure, opinion testimony, and any previously undisclosed fact testimony of Arnaud Pierrard that does not relate specifically to the ▮▮▮▮▮▮▮ product that is the subject of Finesse's Motion for Leave to Amend Its Infringement Contentions ("Motion for Leave," Dkt. 107). During fact discovery, Intervenor-Defendant Nokia of America Corporation ("Nokia") disclosed Mr. Pierrard as a person with relevant knowledge. Once Finesse sought to depose Mr. Pierrard and for discovery of his ESI materials including email, Nokia represented that Mr. Pierrard's knowledge and

materials were not relevant. Then, on the deadline for disclosure of <u>rebuttal</u> expert witnesses, Nokia served a disclosure naming Mr. Pierrard as an expert. Finesse asks the Court to strike Mr. Pierrard's expert disclosure and to exclude testimony from him, as Mr. Pierrard was not produced for deposition during the fact discovery period.

## BACKGROUND

On December 9, 2021, Nokia served its Initial and Amended Disclosures listing Mr. Pierrard as a person with relevant knowledge as to "[t]he design, development, implementation, and operation of the accused technology." Ex. 1 at 4. Nokia amended those disclosures on May 5, 2022 to add additional persons with knowledge, but did not remove Mr. Pierrard or change the knowledge attributed to him. Ex. 2 at 4.

On May 5, 2022, the parties exchanged proposed lists of custodians under the ESI Discovery Order (Dkt. 69). Nokia disclosed Arnaud Pierrard as one of its identified custodians. Ex. 3 (5/5/2022 Khanna email).

On June 30, 2022, due to Mr. Pierrard's inclusion in Nokia's initial and ESI disclosures, Finesse requested a date for Mr. Pierrard's deposition. Ex. 4 (6/30/22 Hewitt email). Nokia did not object at this time to Mr. Pierrard's inclusion.

On July 8, 2022, pursuant to the ESI Discovery Order, Finesse requested that Nokia run search terms over collections of custodians' documents, including Mr. Pierrard's documents. Ex. 5 (7/8/22 Blackburn email). After a meet-and-confer with Defendants regarding these issues and Finesse's intent to move for leave to amend its infringement contentions based on Defendants' responses to Finesse's written discovery, Finesse amended its ESI search terms and custodians on July 18, 2022. Ex. 6 (7/18/22 Blackburn email).

On July 27, 2022, Finesse and Nokia met and conferred to discuss several discovery issues, including depositions and ESI custodians. As documented in Finesse's email to Nokia

████████████████████████████████████

summarizing the meeting, Finesse asked about Mr. Pierrard's availability and ESI custodian status, emphasizing that Finesse wanted to know whether Mr. Pierrard had any knowledge that would not be addressed by other witnesses. Ex. 7 at 5, 6 (Straka–Griffith correspondence). Finesse understood from that meeting that Mr. Pierrard was unavailable because he was older and in France. *Id.* In response, Nokia stated that it did not believe Mr. Pierrard should be a custodian and did not have unique knowledge. *Id.* at 1.

On August 2, 2022, Finesse again asked for a deposition of Mr. Pierrard, noting that Mr. Pierrard appeared to have knowledge outside the ████ product. Ex. 8 at 6 (Straka–Griffith correspondence). Nokia again stated that in Nokia's view, Mr. Pierrard did not have any relevant, non-cumulative knowledge aside from the ████████. *Id.* at 5. Having found information online suggesting that Mr. Pierrard was located in the United States, Finesse asked Nokia again for his availability and was again told he was unavailable. *Id.* at 4. Finesse asked Nokia to update as soon as his availability was known. *Id.* at 3. Two days later, Nokia responded that it had been unable to confirm Mr. Pierrard's availability and again stated that Mr. Pierrard did not have any non-cumulative relevant knowledge. *Id.* at 3.

Not until August 12, 2022 did Nokia again amend its initial disclosures to change the knowledge attributable to Mr. Pierrard: "The design, development, implementation, and operation of the ████ product." Ex. 9 at 4. That same day, Nokia stated that Mr. Pierrard was out of office through the end of August (after the discovery deadline), represented it did not expect to present Mr. Pierrard at trial, and again confirmed he had no non-cumulative, relevant knowledge. Ex. 8 at 1 (Straka–Griffith correspondence).

As explained in the briefing on Finesse's Motion for Leave, Nokia denied that ████ ████████ product, the ████████ radio with which Mr. Pierrard was familiar, could be

3

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

timely added to Finesse's infringement contentions. Finesse moved to amend its infringement contentions to add model numbers for other radio models and to add the ▮▮▮▮ product, and Nokia opposed that motion, which is fully briefed. Dkts. 107, 111, 119, 122. In its briefing, Nokia stated that the Court should not grant the Motion for Leave because doing so would, among other things, require Nokia to put Mr. Pierrard up for deposition regarding the ▮▮▮▮ product (apparently using its own refusal to produce Mr. Pierrard to oppose Finesse's amendment). Dkt. 122 at 5. Finesse maintained (as it still does) that Mr. Pierrard should have been produced for deposition regardless of whether the ▮▮▮▮ product is in the case, as documents produced by Nokia demonstrate that Mr. Pierrard has knowledge regarding other accused products. Dkts. 107 at 11-12, 119 at 4 (citing Dkts. 119-8, 119-9, which show Mr. Pierrard's name on documents related to both ▮▮▮▮).

The same day that Nokia filed its sur-reply on the Motion for Leave, Nokia also served on Finesse a disclosure of Mr. Pierrard as a non-retained expert pursuant to Federal Rule of Civil Procedure 26(a)(2)(C). Ex. 10. That disclosure on its face was not limited to the ▮▮▮▮ product but instead purported to disclose Mr. Pierrard as an expert on, among other things, "the functionality, features, and implementation of Nokia's PIMC products." *Id.* ¶ 5.

Finesse asked Nokia for materials regarding and deposition of Mr. Pierrard and other non-retained experts who had been disclosed that day, and noted that it was surprised at his broad disclosure given the statements in Nokia's briefing on the Motion for Leave. Ex. 11 at 3, 6, 7, 8 (Kaplan–Griffith correspondence). Nokia denied that the disclosure was inconsistent with its briefing and stated that the limits of Mr. Pierrard's testimony should have been obvious from the prior correspondence and briefing but offered to serve an amended disclosure limiting Mr. Pierrard's testimony to the ▮▮▮▮ product. *Id.* at 1-2. On October 11, 2022, Nokia

produced the amended disclosure mentioning the ▆▆▆▆ product rather than Nokia's PIMC products generally. Ex. 12. However, other aspects of Mr. Pierrard's disclosure are untimely and should have been disclosed during fact discovery, or are outside the bounds of proper testimony by a non-retained expert, as discussed below.

## ARGUMENT

Because Nokia did not produce Mr. Pierrard for deposition and did not produce Mr. Pierrard's ESI materials during the fact discovery period, Finesse did not have an opportunity to ask Mr. Pierrard questions that properly belonged in fact discovery. Based on Nokia's representations that Mr. Pierrard's relevant, non-cumulative knowledge is limited to the ▆▆▆▆ ▆▆▆▆, Finesse understands that in the event the Court grants the Motion for Leave, Nokia will promptly produce Mr. Pierrard for deposition—on the fact issues limited to ▆▆▆▆ Finesse maintains that the failure to produce Mr. Pierrard before the fact discovery deadline even regarding the ▆▆▆▆ product was prejudicial, as any subsequent deposition of Mr. Pierrard may require supplementation of Finesse's infringement expert report, with cascading consequences. But Finesse expects that to be resolved on the Motion for Leave.

Other aspects of Mr. Pierrard's disclosure, on the other hand, warrant striking no matter the products in dispute, as they cover aspects of Mr. Pierrard's knowledge and experience at Nokia that should have been made available to Finesse during fact discovery. The table below shows Mr. Pierrard's disclosure before and after amendment:

| Topic # | Original Disclosure (Ex. 10) | Amended Disclosure (Ex. 12) |
|---|---|---|
| 1 | ¶ 1: "Mr. Pierrard has personal knowledge of Nokia's operations and technologies used to address passive intermodulation ("PIM"), including designing, engineering, implementing, and maintaining Nokia's radio products related to the same." | |
| 2 | ¶ 2: "Mr. Pierrard may provide testimony regarding his personal knowledge of PIM, including his knowledge and opinions regarding the different types of PIM, the different causes of PIM, the effects of PIM, and known techniques to mitigate PIM. For example, | |

5

| Topic # | Original Disclosure (Ex. 10) | Amended Disclosure (Ex. 12) |
|---|---|---|
|  | Mr. Pierrard may describe internal PIM, external PIM, passive IM distortion, active IM distortion, the similarities and differences between the foregoing, and the causes and/or sources of each." | |
| 3 | ¶ 2 "Mr. Pierrard may testify to **Nokia products that he is familiar with**, and their capability to address internal or external PIM." | ¶ 2 "Mr. Pierrard may testify to **PIM Smart Canceller**, and its capability to address internal or external PIM." |
| 4 | ¶ 2 "Mr. Pierrard may further testify regarding the general and theoretical effect of PIM in cellular networks, including the effect or lack thereof on certain network performance parameters, including uplink and downlink throughout." | |
| 5 | ¶ 2 "Mr. Pierrard may further testify to his knowledge of cellular service providers' **usage of Nokia products, including products that attempt to address PIM**." | ¶ 2 "Mr. Pierrard may further testify to his knowledge of cellular service providers' **usage of PIM Smart Canceller**." |
| 6 | ¶ 2 "Mr. Pierrard may further testify regarding techniques used to mitigate PIM, for example, base station site hygiene, maintenance of base station sites, component quality, causes of non-linearities that may cause PIM, and mitigation of causes of non-linearities that may cause PIM." | |
| 7 | ¶ 3 "Mr. Pierrard is expected to testify regarding the history of development of **Nokia's PIM cancellation ("PIMC") products**." | ¶ 3 "Mr. Pierrard is expected to testify regarding the history of development of **PIM Smart Canceller**." |
| 8 | ¶ 3 "Mr. Pierrard is expected to testify regarding his understanding of the history of PIM identification and mitigation or cancellation." | |
| 9 | ¶ 4 "Mr. Pierrard is expected to testify to the functionality, features, and implementation of **Nokia's PIMC products**, including both source code and hardware related to those products."[1] | ¶ 4 "Mr. Pierrard is expected to testify to the functionality, features, and implementation of **PIM Smart Canceller**, including both source code and hardware related to that product." |
| 10 | ¶ 5 "Mr. Pierrard may testify regarding additional, related facts and opinions as | ¶ 5 "Mr. Pierrard may testify regarding additional, related facts and opinions as |

---

[1] The full text of Mr. Pierrard's disclosure relating to the "functionality, features, and implementation of Nokia's PIMC products" in the original disclosure and "of PIM SMART Canceller" in the amended disclosure is over a page long in each document. This is a far-reaching topic. As described below, to the extent Mr. Pierrard intends to give any opinion comparing the PIM SMART Canceller to the Asserted Patents or otherwise to opine upon the presence of elements in claim terms, this would be improper opinion testimony. Otherwise, it is not clear why Mr. Pierrard is providing expert testimony on the mere workings of the device, and this belongs in the factual category.

| Topic # | Original Disclosure (Ex. 10) | Amended Disclosure (Ex. 12) |
|---|---|---|
| | necessary to rebut or otherwise respond to arguments made by Finesse or opinions disclosed by its experts, regarding, for example, any arguments regarding Mr. Pierrard's discussion of the functionality, features, and implementation of **Nokia's PIMC products**." | necessary to rebut or otherwise respond to arguments made by Finesse or opinions disclosed by its experts, regarding, for example, any arguments regarding Mr. Pierrard's discussion of the functionality, features, and implementation of **PIM Smart Canceller**." |

Several of these topics, such as 2, 4, 6, and 8, are clearly fact questions unrelated to the ▉ product. Rather, they relate to Mr. Pierrard's <u>general</u> knowledge as to PIM, its presence and problems for radio systems, PIM's effect on specific parameters such as uplink and downlink throughput, Nokia's customers' usage of radio products, the history of PIM identification and mitigation, the history of Nokia's development of PIMC products, and even non-infringing alternatives. Because these are fact issues relevant to the case <u>independent</u> of the ▉ product, both Finesse and Defendants included similar issues as topics in their 30(b)(6) deposition notices. *See* Ex. 13 at, *e.g.*, ¶¶ 3, 5, 7, 8, 10, 45, 50, 59 (Finesse's 30(b)(6) notice to Nokia); Ex. 14 at, *e.g.*, ¶¶ 3, 13, 29, 30 (Defendants' 30(b)(6) notice to Finesse). And fact witnesses for both Finesse and Defendants were asked questions on these topics during <u>fact discovery</u>. *E.g.*, Ex. 15 at 135:8-138:24, 140:19-144:9 (Smith 8/3/22 Depo.); Ex. 16 at 42:8-44:8, 162:5-12 (Smith 8/4/22 Depo.); Ex. 17 at 72:15-23, 73:6-18, 73:20-21 (Chapman 8/11/22 Depo.); Ex. 18 at 373:19-21, 373:23-374:16, 380:10-12, 380:17-381:2, 381:4-25, 382:2-13, 382:15-16 (Chapman 8/12/22 Depo.); Ex. 19 at 26:16-27:15, 29:14-30:19, 45:21-47:17 (Short 8/8/22 Depo.); Ex. 20 at 72:7-73:11 (Casillas 8/5/22 Depo.); Ex. 21 at 151:3-152:8 (Davis 8/17/22 Depo.).

Nokia's prior representation that Mr. Pierrard's knowledge outside of the ▮▮▮▮ product would be irrelevant and/or cumulative, and Nokia's failure to disclose his knowledge previously prevents Nokia from using Mr. Pierrard to insert this knowledge now.

The remaining topics in Mr. Pierrard's disclosure appear to be fact rather than expert issues. These topics 1, 3, 5, 7, 9, and 10 discuss how the ▮▮▮▮ functions or how it is used by Nokia's customers. To the extent this is limited to the design and engineering of the ▮▮▮▮ product and its PIMC technology, this is fact testimony that does not belong in an expert disclosure. And to the extent Mr. Pierrard intends to speak on these topics <u>beyond</u> the scope of an engineer who helped develop those products—for example, expert testimony regarding the products' effectiveness and how they correspond to the patents-in-suit, etc.—that testimony would be improper expert opinion: beyond the role of a non-retained employee "expert" and properly limited to retained experts like Dr. Proctor. *See, e.g.*, *In re: Taxotere (Docetaxel) Prods. Liab. Litig. (Earnest v. Sanofi)*, 26 F.4th 256, 264–68 (5th Cir. 2022) (rejecting party's attempts to "skat[e] the line between Rules 701 and 702" through presentation of corporate representative testimony); Order on Pretrial Motions at 4, *Fractus, S.A. v. AT&T Mobility LLC*, No. 2:18-CV-135-JRG, Dkt. 662 (E.D. Tex. Sept. 16, 2019) (striking in part Rule 26(a)(2)(C) expert disclosure).

The Court should not allow Nokia to use its prior failure to disclose Mr. Pierrard, and Finesse's Motion for Leave regarding the ▮▮▮▮ product, as a backdoor route for Mr. Pierrard to testify as to issues of fact that were properly put to Finesse's and Defendants' <u>fact</u> witnesses during <u>fact</u> discovery. Nor should the Court allow Mr. Pierrard to provide expert testimony on the ▮▮▮▮ product under the guise of a developer of the product with knowledge of its facts.

## CONCLUSION

Therefore, Finesse respectfully asks this Court to strike the expert disclosure and any opinion testimony of Arnaud Pierrard, regarding the ▇▇▇▇ and otherwise, and to exclude any fact testimony of Mr. Pierrard that does not pertain specifically to the ▇▇▇▇ product.

DATED: October 11, 2022                    Respectfully submitted,

By:   /s/ Joseph S. Grinstein
Joseph S. Grinstein – Lead Counsel
   Texas State Bar No. 24002188
   jgrinstein@susmangodfrey.com
Shawn Blackburn
   Texas State Bar No. 24089989
   sblackburn@susmangodfrey.com
Meng Xi
   California State Bar No. 280099
   mxi@susmangodfrey.com
Megan E. Griffith
   New York State Bar No. 5544309
   mgriffith@susmangodfrey.com
Bryce T. Barcelo
   Texas State Bar No. 24092081
   bbarcelo@susmangodfrey.com
**SUSMAN GODFREY LLP**
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Jillian Hewitt
   New York State Bar No. 5469945
   jhewitt@susmangodfrey.com
**SUSMAN GODFREY LLP**
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Telephone: (212) 336-8330
Facsimile: (212)336-8340

S. Calvin Capshaw
   Texas State Bar No. 03783900
   ccapshaw@capshawlaw.com

9

        Elizabeth L. DeRieux
         Texas State Bar No. 05770585
         ederieux@capshawlaw.com
        **CAPSHAW DERIEUX LLP**
        114 E. Commerce Ave.
        Gladewater, TX 75647
        Telephone (903) 845-5770

        T. John Ward, Jr.
         Texas State Bar No. 00794818
         jw@wsfirm.com
        Andrea Fair
         Texas State Bar No. 24078488
         andrea@wsfirm.com
        Chad Everingham
         Texas State Bar No. 00787447
         ce@wsfirm.com
        **WARD, SMITH & HILL, PLLC**
        PO Box 1231
        Longview, Texas 75606
        Telephone: (903) 757-6400
        Facsimile: (903) 757-2323

        **ATTORNEYS FOR PLAINTIFF**
        **FINESSE WIRELESS, LLC**

## CERTIFICATE OF CONFERENCE

  I hereby certify that counsel for Finesse conferred with counsel for Defendants on October 11, 2022. Finesse understands that Defendants oppose the relief sought in this motion.

        By: */s/ Joseph S. Grinstein*
          Joseph S. Grinstein

## CERTIFICATE OF SERVICE

  I hereby certify that counsel of record are being served this 11th day of October, 2022, with a copy of this document via email.

        By: */s/ Joseph S. Grinstein*
          Joseph S. Grinstein

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is being filed under seal pursuant to the Protective Order entered in this matter.

By: /s/ *Joseph S. Grinstein*
Joseph S. Grinstein
