**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| FINESSE WIRELESS, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 2:21-CV-00316-JRG |
| | § | (Lead Case) |
| AT&T MOBILITY, LLC, AND | § | |
| | § | |
| CELLCO PARTNERSHIP d/b/a | § | |
| VERIZON WIRELESS | § | |
| | § | |
| Defendants, | § | |
| | § | CASE NO. 2:21-CV-00317-JRG |
| NOKIA OF AMERICA CORP., AND | § | (Member Case) |
| | § | |
| ERICSSON INC. | § | |
| | § | |
| Intervenor-Defendants. | § | |

**<u>DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT FOR INVALIDITY OF THE</u>**
**<u>'775 PATENT ASSERTED CLAIMS</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ........................................................................................1

II.    STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT...........................1

III.   STATEMENTS OF UNDISPUTED MATERIAL FACTS .............................................1

      A.    The Asserted Patent .....................................................................................1

IV.   LEGAL STANDARDS ........................................................................................5

V.    ARGUMENT ......................................................................................................6

      A.    The Level of Ordinary Skill in the Art is Undisputed .............................7

      B.    The Prior Art Indisputably Discloses All of the '775 Patent Claim
           Limitations ..................................................................................................8

      C.    The "Secondary Considerations" Confirm That The Asserted Claims Are
           Obvious .....................................................................................................12

VI.   CONCLUSION ..................................................................................................15

# TABLE OF AUTHORITIES

**Page**

## Cases

*Arthur A. Collins, Inc. v. N. Telecom, Ltd.,*
  216 F.3d 1042, 1046–48 (Fed. Cir. 2002) ............................................................. 8

*Bristol-Myers Squibb Co v. Teva Pharm. USA, Inc.,*
  752 F.3d 967 (Fed. Cir. 2014) .............................................................................. 12

*EMG Tech., LLC v. Vanguard Grp., Inc.,*
  No. 6:12-cv-543, 2014 WL 12597428 (E.D. Tex. June 24, 2014) ..................... 8, 11

*Graham v. John Deere Co.,*
  86 S. Ct. 684 (1966) .............................................................................................. 5

*Intercont'l Great Brands LLC v. Kellogg N. Am. Co.,*
  869 F.3d 1336 (Fed. Cir. 2017) ............................................................................ 6

*Iron Grip Barbell Co. v. USA Sports, Inc.,*
  392 F.3d 1317 (Fed. Cir. 2004) ............................................................................ 13

*KSR Int'l Co. v. Teleflex Inc.,*
  127 S. Ct. 1727 (2007) .......................................................................................... 5

*Ohio Willow Wood Co. v. Alps S., LLC,*
  735 F.3d 1333 (Fed. Cir. 2013) ....................................................................... 12, 14

*Perfect Web Techs., Inc. v. InfoUSA, Inc.,*
  587 F.3d 1324 (Fed. Cir. 2009) ............................................................................ 6

*Scott v. Harris,*
  550 U.S. 372 (2007) ........................................................................................... 5, 6

*Valeant Pharm. In''l, Inc. v. Mylan Pharm. Inc.,*
  955 F.3d 25 (Fed. Cir. 2020) ................................................................................ 5

*Wyers v. Master Lock Co.,*
  616 F.3d 1231 (Fed. Cir. 2010) ............................................................................ 5

*ZUP, LLC v. Nash Mfg., Inc.,*
  896 F.3d 1365 (Fed. Cir. 2018) ........................................................................ 6, 12

## Statutory Authorities

35 U.S.C. § 102(b) ..................................................................................................... 2, 3

35 U.S.C. § 103(a) ...................................................................................................... 5

## Rules and Regulations

Fed. R. Civ. P. 56(a) ................................................................................................... 5

████████████████████████

## TABLE OF EXHIBITS

| Exhibit | Title |
|---------|-------|
| Ex. 1 | U.S. Patent No. 9,548,775 ("'775 patent") |
| Ex. 2 | 8/10/2022 Finesse Disclosure of Asserted Claims |
| Ex. 3 | Excerpts from Expert Report of Dr. Jonathan Wells – Infringement of U.S. Patents No. 9,548,775 and U.S. Patent No. 7,346,134 ("Wells Rep.") |
| Ex. 4 | U.S. Patent No. 7,346,134 ("'134 patent") |
| Ex. 5 | "Passive intermodulation interference in communication systems" by P.L. Lui, published in the Electronic & Communication Engineering Journal in June 1990. ("Lui"). |
| Ex. 6 | Expert Report of Sylvia D. Hall-Ellis, Ph.D, dated August 19, 2022. |
| Ex. 7 | Excerpts from the Deposition Transcript of Francis J. Smith, dated August 3, 2022. |
| Ex. 8 | Excerpts from the Deposition Transcript of Francis J. Smith, dated August 4, 2022. |
| Ex. 9 | Excerpts from Expert Report Of James Proctor Regarding Invalidity Of U.S. Patent Nos. 7,346,134 And 9,548,775 ("Proctor Invalidity Rpt.") |
| Ex. 10 | Rebuttal Expert Report of Dr. Ray Nettleton Re: the Validity of U.S. Patents No. 9548,775 and U.S. Patent No. 7,346,134, dated September 23, 2022. |
| Ex. 11 | Excerpts from Rough Transcript of 10/10/2022 Deposition of Dr. Ray Nettleton (Nettleton Rough Tr.) |

## I.   <u>INTRODUCTION</u>

Finesse has asserted two patents in this case—the '775 patent and the '134 patent.  It is undisputed that the '134 patent is prior art to the '775 patent.  Defendants' expert, Mr. Proctor, opined that every limitation of every asserted claim of the '775 Patent is met by the '134 Patent in combination with another prior art reference—the Lui reference.  In response to Mr. Proctor's detailed opinions, Finesse's expert, Dr. Nettleton offered only 9 paragraphs in rebuttal—none of which rebut the opinions that Mr. Proctor offered with respect to the disclosures of the '134 Patent.  This is unsurprising given that the sole inventor on both patents—Frank Smith—testified repeatedly that the scope of the two asserted patents are essentially the same.  Given these facts, Finesse's claims with respect to the '775 patent fail as a matter of law because all of the Asserted Claims are invalid.

## II.   <u>STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT</u>

Whether the '775 patent asserted claims are obvious, and therefore invalid, based on the combination of the '134 Patent and Lui, which together indisputably disclose all of the asserted claim limitations.

## III.   <u>STATEMENTS OF UNDISPUTED MATERIAL FACTS</u>

### A.   <u>The Asserted Patent</u>

1.       Finesse asserts infringement of claims 1, 4, 9, 16, 21, 23, 29, and 36 of the '775 patent.  *See* Ex. 2, 8/10/2022 Finesse Disclosure of Asserted Claims; Ex. 3, Wells Rep. ¶¶ 2-3.

2.   Claim 1 is exemplary:

| 1 [pre] | A method for performing interference cancellation in a receiver, with a transmitter and the receiver being co-located with each other, the method comprising: and includes generating an n-th order ICS by, given three signals S1, S2 and S3, digitally multiplying and filtering S1×S1×S2 and S1×S2×S2 and S 1×S2×S3 and S1×S1×S3 and |

| | |
|---|---|
| | S2×S2×S3 and S1×S3×S3 and S2×S3×S3, where n is an integer. |
| 1[a] | generating intermodulation product (IMP) cancellation signals (ICSs) to cancel passive IMPs in the receiver, continuously and near real time, using copies of transmitter signals of the transmitter, |
| 1[b] | wherein the passive IMPs are generated in passive transmitter components of the transmitter and receiver components of the receiver after a high powered amplifier (HPA) and transmitter filter of the transmitter, |
| 1[c] | wherein the transmitter filter is coupled between the HPA and an antenna used by the transmitter, wherein generating the ICSs is based on a power series description of a non-linear process for generating the IMPs, |
| 1[d] | wherein generating the ICSs is based on a power series description of a non-linear process for generating the IMPs, and includes generating an n-th order ICS by, given three signals S1, S2 and S3, digitally multiplying and filtering S1×S1×S2 and S1×S2×S2 and S 1×S2×S3 and S1×S1×S3 and S2×S2×S3 and S1×S3×S3 and S2×S3×S3, where n is an integer. |

Ex. 1 ('775 Patent at Claim 1).

3.      The '775 patent was filed on August 5, 2010, as a continuation-in-part of application number 11/851,185, which issued as U.S. Patent Number 7,773,967 and was filed on September 6, 2007.[1]  Ex. 1 ('775 Patent).

4.      The '134 Patent was filed on May 14, 2002 and published as U.S. Published Application Number 2003/0021367 on January 30, 2003.  Ex. 4 ('134 Patent).  It is prior art to the '775 Patent under 35 U.S.C. § 102(b).

---

[1] Although Defendants contest the priority date of the '775 Patent claims, for purposes of this motion, Defendants assume a priority date no earlier than September 6, 2007.  For simplicity, and because this dispute does not need to be resolved for purposes of this motion, Defendants refer to the priority date that Dr. Nettleton was told to assume.  *See* Ex. 10, (Nettleton Rebuttal Rpt.) at ¶ 95.

5.      The Lui reference was published in the Electronic & Communication Engineering Journal in June 1990.  Ex. 5 (DEFS_PA_000003) ("Lui"); Ex. 6 (Hall-Ellis Rpt.) at ¶¶ 76-83.  It is prior art to the '775 Patent under 35 U.S.C. § 102(b).

6.      Mr. Smith testified that the "inventions disclosed in the '775 patent" are "in '134 because the techniques for intermod cancellation in the '134 whether they're active or passive, they're identical. They're the same thing."  Ex. 7 (8-3-22 Smith Dep. Tr.) at 105-06.  He explained that "if you're doing '775, you're doing '134" and that the "fundamental underlying invention in '134 is the premise of the '775."  *Id.* at 130; 140:11-18.

7.      Mr. Smith further testified that he "knew the technique was the same" in both the '775 patent and the '134 patent, and he "anticipated '134 probably covered it," yet he decided that if he had "new and a little bit different ideas," he "ought to continue to patent them . . . ."  *Id.* at 105:11-16.

8.      With respect to Lui, Mr. Smith testified that the Lui paper describes "comm theory 101" on "passive intermodulation." Ex. 8 (8-4-2022 Smith Dep. Tr.) at 20:25-21:17; *see also* 22:9-24; 25:14-26:11; 27:23-28:14 (describing the techniques in the Lui paper as "all standard practice"); 29:15-25; 147:10-148:1 (describing Lui as "defining the problem"). Mr. Smith further testified that it was his understanding that the phenomena of passive intermodulation as explained by Lui was well known since at least the time of Marconi, dating back to the early part of the 20th century. Ex. 7 (8/3/2022 Smith Dep. Tr.) at 195-96.

9.      Defendants' expert, Mr. Proctor, opined that the '134 Patent in combination with Lui disclosed every element of every asserted claim of the '775 Patent.  *See* Ex. 9, (Proctor Invalidity Rpt.) at ¶¶ 795-880.

10.     Dr. Nettleton's rebuttal report includes no rebuttal opinions with respect to Mr. Proctor's mapping of the '134 Patent disclosures to the '775 patent claim limitations.  *See* Ex. 10 (Nettleton Rebuttal Rpt.) at ¶¶ 323-31.

11.     At his deposition, Dr. Nettleton testified that the only thing that was not explicitly disclosed in the '134 Patent that is claimed in the '775 Patent is "the power series modeling."  Ex. 11 (Nettleton Rough Dep. Tr.) at 129:12-130:4.  However, he also testified that the '134 patent provides enough information for a POSITA to figure out how to do the modeling:

> Q.   Do you agree that the fundamental underlying invention in the '134 Patent is the premise of the '775 Patent?
>
> MS. XI:  Object to form.
>
> THE WITNESS:  Well, they're cancelation of intermodulation products and the '775 talks about how to actually do the modeling.
>
> BY MS. STRAKA:  Q.   Does the '134 Patent talk about how to do the modeling?
>
> MS. XI:  Object to form.
>
> THE WITNESS:  It provides enough information for positer [sic] to figure out how that is done.  In [sic] talks about linearities of the system, and measuring intercept points second and third order specifically.
>
> BY MS. STRAKA:   Q.   And that was already well-known before both the 134 and the '775 patents were filed, right?
>
> MS. XI:  Object to form.
>
> THE WITNESS:  Yes.

Ex. 11 (Nettleton Rough Dep. Tr.) at 128:15-129-14.

12.     Dr. Nettleton also agreed that the mathematics disclosures in the Lui reference goes back more than a century and is well understood.  Ex. 11 (Nettleton Rough Dep. Tr.) at 76:14-83:12.

IV.   **LEGAL STANDARDS**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (alterations in original, citation omitted).

"A patent may not be obtained … if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  35 U.S.C. § 103(a).  Obviousness is a question of law based on four underlying factual inquiries: (1) the scope and content of the prior art, (2) differences between the prior art and the claims at Issue, (3) the level of ordinary skill in the pertinent art, and (4) any secondary considerations. *Valeant Pharm. In''l, Inc. v. Mylan Pharm. Inc.*, 955 F.3d 25, 28 (Fed. Cir. 2020) (citing *Graham v. John Deere Co*., 86 S. Ct. 684, 694 (1966)).  Secondary considerations include "commercial success, long felt but unsolved needs, and the failure of others" but "simply cannot overcome a strong prima facie case of obviousness."  *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1237-1246 (Fed. Cir. 2010).

As noted by the Court in *KSR*, "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1739 (2007).  "When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp.  If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense."  *Id*. at 1742.  An obviousness analysis incorporates "logic, judgment, and

common sense available to the person of ordinary skill that do not necessarily require explication in any reference or expert opinion." *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1329 (Fed. Cir. 2009).

"Depending on the record in a particular case, 'summary judgment of invalidity for obviousness may be appropriate.'" *ZUP, LLC v. Nash Mfg., Inc.*, 896 F.3d 1365, 1371 (Fed. Cir. 2018) (quoting *Intercont'l Great Brands LLC v. Kellogg N. Am. Co.*, 869 F.3d 1336, 1344 (Fed. Cir. 2017)). "In particular, where 'the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate.'" *Id.* (quoting *KSR Int'l Co.*, 550 U.S. at 427).

## V.   **ARGUMENT**

The Asserted Claims are obvious because they claim nothing more than the combination of known elements according to known methods and yield nothing more than predictable results. *See KSR*, 127 S. Ct. at 1739.   "[T]he content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute" and therefore, this is a case where it is appropriate to consider obviousness on summary judgment.  *See ZUP, LLC*, 896 F.3d at 1371.

In his report, Mr. Proctor explains how every limitation in the '775 Patent is met by the '134 Patent in combination with Lui.  *See* Ex. 9, (Proctor Invalidity Rpt.) at ¶¶ 795-880.   More specifically, he provides detailed analysis explaining how each limitation is met by the '134 Patent. *See id.*   He further opines that to the extent the '134 Patent does not explicitly disclose the mathematical details of using a power series to estimate passive IM, that math was well-known long before the filing of either of the asserted patents, and is explicitly disclosed in the Lui reference.  *See id.*

In response, Dr. Nettleton opines that A POSITA would not be motivated to combine the '134 Patent with Lui (Ex. 10 (Nettleton Rebuttal Rpt.) at ¶ 324), but he admits that the math relating to PIM disclosed explicitly in Lui was well known to a person of ordinary skill in the art long before the '775 Patent was filed (Ex. 11 (Nettleton Rough Dep. Tr.) at 76:14-83:12).  Dr. Nettleton also opines that Lui does not disclose certain limitations (*see* Ex. 10 (Nettleton Rebuttal Rpt.) at ¶¶ 326-331), but Mr. Proctor is relying on the '134 Patent as the primary reference for every limitation (Ex. 9 (Proctor Invalidity Rpt.) at ¶¶ 810-840), and yet, Dr. Nettleton acknowledges that he provided no substantive rebuttal with respect to the '134 Patent (Ex. 11 (Nettleton Rough Dep. Tr.) at 186:2-189:15).  Dr. Nettleton's threadbare and conclusory opinions are insufficient to survive summary judgment.

A.      **The Level of Ordinary Skill in the Art is Undisputed**

Dr. Nettleton opines "a person of ordinary skill in the art would be a person with a bachelor's degree in electrical engineering or some similar field, along with three or more years of experience with the design of wireless communications equipment. Additional education could substitute for some of the experience, and substantial experience could substitute for some of the educational background."   Ex. 10 (Nettleton Rebuttal Rpt.) at ¶ 96.  Mr. Proctor's opinion is substantially similar: "it is my opinion that a person of ordinary skill in the art would be a person with a Masters in electrical engineering, computer engineering, or similar fields and at least 2-3 years of work experience in the area of communications systems design and signal processing. A lack of work experience may be compensated for by additional education, and vice versa."  Ex. 9 (Proctor Invalidity Rpt.) at ¶ 175.  Dr. Nettleton has not identified a difference between the levels of skill in the art that matters for purposes of his validity analysis.  Therefore, there is no genuine dispute with respect to the level of ordinary skill in the art.

**B.     The Prior Art Indisputably Discloses All of the '775 Patent Claim Limitations**

Dr. Nettleton admitted at his deposition that the '134 Patent discloses all of the '775 Patent claim limitations other than the power series modeling.  Ex. 11 (Nettleton Rough Dep. Tr.) at 129:12-130:4.  He further admitted that the Lui reference discloses the power series modeling and that the math in Lui has been well known to a POSITA long before the Asserted Patents were filed. Ex. 11 (Nettleton Rough Dep. Tr.) at 76:14-83:12.  The inventor, Mr. Smith, also testified that the math has been well known since long before he came up with his alleged inventions.  Ex. 7 (8/3/2022 Smith Dep. Tr.) at 195-96.  Mr. Smith also repeatedly testified the fundamental invention is the same between the '775 Patent and the '134 Patent.  *See supra*.  Therefore, there is no genuine dispute that the '134 Patent in combination with Lui discloses all limitations of the '775 patent asserted claims as is described further below.

**1.     "performing interference cancellation in a receiver, with a transmitter and the receiver being co-located with each other, the method comprising"**

Mr. Proctor explains in detail how the '134 Patent discloses performing interference cancellation in a receiver where the transmitted and received are co-located.  Ex. 9 (Proctor Invalidity Rpt.) at ¶¶ 810-813.  Dr. Nettleton stated that he disagreed that the '134 Patent practices the claimed method, but he didn't provide any reason why the '134 Patent didn't meet this limitation in his report.  *See* Ex. 10 (Nettleton Rebuttal Rpt.) at ¶ 325.  Dr. Nettleton's conclusory statement cannot create a disputed material fact.  *EMG Tech., LLC v. Vanguard Grp., Inc.*, No. 6:12-cv-543, 2014 WL 12597428, at *3 (E.D. Tex. June 24, 2014) ("But an expert's ipse dixit statements 'are not sufficient to avoid summary judgment.' *Parallel Networks, LLC v. Abercrombie & Fitch Co.*, 704 F.3d 958, 970 (Fed. Cir. 2013) (citing *Arthur A. Collins, Inc. v. N. Telecom, Ltd.*, 216 F.3d 1042, 1046–48 (Fed. Cir. 2002)).

Therefore, there is no genuine dispute that the '134 Patent discloses this limitation.

### 2.   "generating intermodulation product (IMP) cancellation signals (ICSs) to cancel passive IMPs in the receiver, continuously and near real time, using copies of transmitter signals of the transmitter,"

Mr. Proctor opines how the '134 Patent discloses generating intermodulation cancellation signals (ICSs) to cancel passive IMPs in the receiver continuously and in real time using copies of the transmitter signals of the transmitter.  Ex. 9 (Proctor Invalidity Rpt.) at ¶¶ 814-818.  Dr. Nettleton did not provide any rebuttal to Mr. Proctor's opinions with respect to the '134 Patent's disclosure relative to this limitation.  Ex. 10 (Nettleton Rebuttal Rpt.) at ¶ 328.  Further, Dr. Nettleton testified that a POSITA would understand the '134 Patent to disclose cancelling  passive IMPs.  Ex. 11 (Nettleton Rough Dep. Tr.) at 122:5-123:1.  He further testified that a POSITA would understand the '134 Patent to cancel IMPs in the receiver continuously and near real time. Ex. 11 (Nettleton Rough Dep. Tr.) at 121:3-18.

Mr. Proctor further opines to the extent that the '134 does not explicitly disclose "passive intermodulation," a POSITA would understand that passive IMPs in the receiver could be canceled based on the disclosure in Lui.  Ex. 9 (Proctor Invalidity Rpt.) at ¶¶ 814-818.

Therefore, there is no genuine dispute that that the combination of the '134 Patent and Lui discloses this limitation.

### 3.   "wherein the passive IMPs are generated in passive transmitter components of the transmitter and receiver components of the receiver after a high powered amplifier (HPA) and transmitter filter of the transmitter,"

As explained above, Mr. Proctor explains in detail how the '134 Patent discloses generating intermodulation cancellation signals (ICSs) to cancel IMPs in the receiver continuously and in real time using copies of the transmitter signals of the transmitter.  *See supra*; Ex. 9 (Proctor Invalidity Rpt.) at ¶¶ 823-27.  Dr. Nettleton did not provide any rebuttal to Mr. Proctor's opinions with

respect to '134 Patent's disclosure relative to this limitation.  Ex. 10 (Nettleton Rebuttal Rpt.) at ¶ 329.  Further, Dr. Nettleton testified that a POSITA would understand the '134 Patent to disclose cancelling  passive IMPs.  Ex. 11 (Nettleton Rough Dep. Tr.) at 122:5-123:1.

Mr. Proctor further opines to the extent that the '134 does not explicitly disclose "passive intermodulation," a POSITA would understand that passive IMPs in the receiver could be canceled according to the disclosure in Lui.  Ex. 9 (Proctor Invalidity Rpt.) at ¶¶ 828.

Therefore, there is no genuine dispute that that the combination of the '134 Patent and Lui discloses this limitation.

### 4. "wherein the transmitter filter is coupled between the HPA and an antenna used by the transmitter,"

Mr. Proctor explains that '134 Patent discloses a transmitter filter coupled between the HPA and an antenna used by the transmitter.  Ex. 9 (Proctor Invalidity Rpt.) at ¶¶ 829-831.  Dr. Nettleton did not provide any rebuttal to Mr. Proctor's opinions with respect to '134 Patent's disclosure relative to this limitation.  Ex. 10 (Nettleton Rebuttal Rpt.) at ¶ 330.

Therefore, there is no genuine dispute that that the combination of the '134 Patent discloses this limitation.

### 5. "wherein generating the ICSs is based on a power series description of a non-linear process for generating the IMPs, and includes generating an n-th order ICS by, given three signals S1, S2 and S3, digitally multiplying and filtering S1×S1×S2 and S1×S2×S2 and S1×S2×S3 and S1×S1×S3 and S2×S2×S3 and S1×S3×S3 and S2×S3×S3, where n is an integer."

Mr. Proctor explains in detail how the '134 Patent discloses generating intermodulation cancellation signals (ICSs).  Ex. 9 (Proctor Invalidity Rpt.) at ¶¶ 832-36.  Dr. Nettleton did not provide any rebuttal to Mr. Proctor's opinions with respect to '134 Patent's disclosure relative to this limitation.  Ex. 10 (Nettleton Rebuttal Rpt.) at ¶ 330.  Further, Dr. Nettleton testified that a

POSITA would understand the '134 Patent to disclose cancelling passive IMPs.   Ex. 11 (Nettleton Rough Dep. Tr.) at 122:5-123:1.

Mr. Proctor further opines to the extent that the '134 does not explicitly disclose generating the ICSs based on a power series description of a non-linear process for generating the IMPs, a POSITA would understand that passive IMPs in the receiver could be canceled according to the disclosure in Lui.  Ex. 9 (Proctor Invalidity Rpt.) at ¶¶ 837-43.  Dr. Nettleton agrees that Lui teaches a power series description of a non-linear process for generating the IMPs, and that the math was well known for more than a century.

Therefore, there is no genuine dispute that that the combination of the '134 Patent and Lui discloses this limitation.  Ex. 11 (Nettleton Rough Dep. Tr.) at 76:14-83:12.

### 6.      Dr. Nettleton Opines That Claims Are Essentially the Same and Provides No Rebuttal With Respect To The Other Asserted Claims

Defendants' invalidity expert, Mr. Proctor, offered opinions that all of the asserted claims of the '775 patent were obvious in light of the '134 patent.  Ex. 9 (Proctor Invalidity Rpt.) at ¶¶ 795-880.  Dr. Nettleton, Finesse's validity expert, responded solely with respect to claim 1 of the '775 patent.  Ex. 10 (Nettleton Rebuttal Rpt.) at pp. 78-81.  Dr. Nettleton opined that because the other asserted "claims share the same essential limitations" as claim 1, that his analysis "applies with equal force to all the independent claims." *Id.*  pp. 81-82.  Dr. Nettleton did not separately provide any analysis for any of the other asserted claims.  Nettleton Rep. pp. 78-81.  Therefore, to the extent there is no material disputed issue of fact for claim 1, there can be no material disputed issue of fact for any of the asserted claims given Dr. Nettleton's opinion that his analysis for claim 1 applies to each.

### 7.    Motivation to Combine the '134 Patent and Lui

Mr. Proctor explains that a person of ordinary skill in the art would have been motivated to combine the '134 Patent and Lui. Ex. 9 (Proctor Invalidity Rpt.) at ¶¶ 804-09.  In response, Dr. Nettleton opines that "[a] POSITA looking for a technical approach to interference cancellation would not look to combine the '134 Patent with Lui, since the latter describes only the nature of signals generated by passive nonlinearities and the site hygiene recommended to minimize them." Ex. 10 (Nettleton Rebuttal Rpt.) at ¶ 324.  However, Mr. Proctor opines that the '134 Patent that teaches cancellation—not Lui.  *See supra.*  Mr. Proctor is relying on Lui only for the simple proposition that PIM and the mathematical relationship for deriving intermodulation cancellation signals was well known long before the '775 Patent was filed.  *Id.*  Dr. Nettleton agrees that PIM are well known to a POSITA and the mathematical relationships have been known for "over a century."  Ex. 11 (Nettleton Rough Dep. Tr.) at 76:14-83:12.  Indeed, Mr. Smith testified that Lui is "comm theory 101" (Ex. 8 (8-4-2022 Smith Dep. Tr.) at 20:25-21:17) and therefore, there is no reasonable dispute that the disclosures of the '134 Patent and Lui are combinable.

### C.    The "Secondary Considerations" Confirm That The Asserted Claims Are Obvious

Finesse contends various "secondary considerations" show that the Asserted Claims would not have been obvious to a POSITA.  None of them are legally sufficient to survive summary judgment.  *See ZUP, LLC*, 896 F.3d at 1373 (granting summary judgment of obviousness and finding "[patentee's] minimal evidence of secondary considerations does not create a genuine dispute of fact sufficient to withstand summary judgment on the question of obviousness"); *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1344 (Fed. Cir. 2013) ("[W]here a claimed invention represents no more than the predictable use of prior art elements according to established

functions, as here, evidence of secondary indicia are frequently deemed inadequate to establish non-obviousness.").

For example, Dr. Nettleton first opines that in his own personal experience in the 1980s that that NASA and the Navy mitigated PIM site hygiene and "in neither case was cancellation ever considered during my involvement with the programs." Ex. 10 (Nettleton Rebuttal Rpt.) at ¶¶334-35.   But Dr. Nettleton's anecdotal experience from the 1980s cannot reasonably demonstrate non-obviousness of the asserted claimed of the '775 Patent filed years later in 2010.

Dr. Nettleton next opines that the results of the invention were unexpected because "the invention could provide 15 to 30 dB of improvement as opposed to the only 3 to 6 dB that Mr. Smith and others had anticipated," but the law on unexpected results is clear that an "unexpected result" must be a difference in kind and not merely a difference of degree.   *See Bristol-Myers Squibb Co v. Teva Pharm. USA, Inc.*, 752 F.3d 967, 977 (Fed. Cir. 2014) ("To be particularly probative, evidence of unexpected results must establish that there is a difference between the results obtained and those of the closest prior art, and that the difference would not have been expected by one of ordinary skill in the art at the time of the invention.") (citation omitted); *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1322 (Fed. Cir. 2004) (to be probative of nonobviousness, unexpected results must be "different in kind and not merely in degree from the results of the prior art").

In relation to "simultaneous invention," "failure of others," and "departure from accepted wisdom," Dr. Nettleton opines that the prior art is deficient; however, his basis for that assumption is again conclusory: "in the absence of contrary evidence I must assume [the prior art] are 'failures' at least in the context of the patents-in-suit."  *See, e.g.*, Ex. 10 (Nettleton Rebuttal Rpt.) at ¶ 343.

13

He admitted at his deposition that he didn't do analysis or testing of the prior art to support those opinions.  Ex. 11 (Nettleton Rough Dep. Tr.) at 205:19-207:25.

He also notes that the inventions received "professional acclaim" based on the testimony of the inventor Mr. Smith and his references to Dr. Thomas Lee and Dr. Gary Kelson.  However, he fails to acknowledge that Dr. Lee was paid by Finesse and Dr. Kelson was providing Finesse assistance with getting access to the Berkeley Wireless Development Center.  *See* Ex. 7 (8-3-22 Smith Dep. Tr.) at 179:5-9; Ex. 8 (8-4-22 Smith Dep. Tr.) at 102:17-103:8.

Dr. Nettleton also notes that the patents have been cited over 50 times by other patents (Ex. 10 (Nettleton Rebuttal Rpt.) at ¶ 361), but he does not explain how that demonstrates that the claims of the '775 patent are non-obvious nor is he able to put that number of citations into context. Ex. 11 (Nettleton Rough Dep. Tr.) at 208:1-211:1.

Dr. Nettleton also claims that Nokia's alleged use of the inventions (and Ericsson's potential future use of the inventions) demonstrates that the inventions were non-obvious (Ex. 10 (Nettleton Rebuttal Rpt. at ¶ 342), but nowhere in his report has Dr. Nettleton demonstrated that any of the products actually practice the Asserted Claims, or that the perceived benefits of these products are tied to the Asserted Claims.  In fact, he admitted that he hasn't analyzed either the Nokia or the Ericsson products.  Ex. 11 (Nettleton Rough Dep. Tr.) at 204:8-205:18

In sum, Finesse's alleged secondary considerations of non-obviousness do not defeat the strong and established prima facie case of obviousness.  *See Ohio Willow*, 735 F.3d at 1344 ("[W]here a claimed invention represents no more than the predictable use of prior art elements according to established functions, as here, evidence of secondary indicia are frequently deemed inadequate to establish non-obviousness.'").

14

VI.   **<u>CONCLUSION</u>**

It is undisputed that the '134 Patent and Lui together disclose all of the limitations of the '775 Patent Claims.  No reasonable fact finder could find the '775 Patent asserted claims non-obvious.  The Court should enter summary judgment that the '775 Patent Asserted Claims are invalid as obvious.

DATED: October 11, 2022                    Respectfully submitted,

By: */s/ Jeffrey Scott Becker*
Douglas M. Kubehl
State Bar Number 00796909
Email: doug.kubehl@bakerbotts.com
Jeffery Scott Becker
State Bar Number 24069354
Email: jeff.becker@bakerbotts.com
Susan Cannon Kennedy
State Bar Number 24051663
Email: susan.kennedy@bakerbotts.com
**Baker Botts L.L.P.**
2001 Ross Avenue, Suite 900
Dallas, TX  75201
Telephone: (214) 953-6500
Facsimile: (214) 661-6503

Brandon Chen
State Bar Number 24095814
Email: brandon.chen@bakerbotts.com
**Baker Botts L.L.P.**
910 Louisiana Street, Suite 3200
Houston, TX 77002
Telephone: (713) 229-1611
Facsimile: (713) 229-2811

Deron R. Dacus
Texas Bar No. 00790553 Email:
ddacus@dacusfirm.com
**THE DACUS LAW FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1171
Fax: (903) 581-2543

**ATTORNEYS FOR DEFENDANT
AT&T MOBILITY LLC**

By:   */s/ Ross R. Barton*
Ross R. Barton (NC Bar No. 37179)
J. Ravindra Fernando (NC Bar No. 49199)
**ALSTON & BIRD LLP**
101 South Tyron Street, Suite 4000
Charlotte, North Carolina, 28280
Phone: (704) 444-1000

16

Fax: (704) 444-1111
Email: ross.barton@alston.com
Email: ravi.fernando@alston.com

Adam Ahnhut (TX Bar No. 24106983)
**ALSTON & BIRD LLP**
Chase Tower
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
Telephone: 214-922-3400
Facsimile: 214-922-3899
Email: adam.ahnhut@alston.com

Deron R. Dacus (Texas Bar No. 00790553)
**THE DACUS LAW FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1171
Fax: (903) 581-2543
Email: ddacus@dacusfirm.com

**ATTORNEYS FOR DEFENDANT CELLCO
PARTNERSHIP D/B/A VERIZON
WIRELESS**

By:  _/s/ Brianne M. Straka_
Scott Cole (State Bar No. 00790481)
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
201 West 5th Street 11th Floor
Austin, Texas 78701
(713) 221-7006
(737) 667-6110 (facsimile)
scottcole@quinnemanuel.com

David A. Nelson
Brianne M. Straka (IL State Bar No. 6300972)
Marc Kaplan (IL State Bar No. 6303652)
Rajat Khanna (IL State Bar No. 6317120)
Harrison B. Rose (IL State Bar No. 6327523)
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
191 N. Wacker Dr., Suite 2700
Chicago, IL 60606
(312) 705-7400

17

(312) 705-7401 (Facsimile)
davenelson@quinnemanuel.com
briannestraka@quinnemanuel.com
marckaplan@quinnemanuel.com
rajatkhanna@quinnemanuel.com
harrisonrose@quinnemanuel.com

Michael E. Jones (State Bar No. 10929400_
**POTTER MINTON, P.C.**
110 N. College Ave., Suite 500
Tyler, Texas 75702
Tel: (903) 597-8311
Fax: (903) 593-0846
mikejones@potterminton.com

**ATTORNEYS FOR INTERVENOR NOKIA
OF AMERICA CORPORATION**

18

**CERTIFICATE OF SERVICE**

I hereby certify that counsel of record are being served this 11th day of October, 2022, with a copy of this document via email.

By:   */s/ Brianne M. Straka*
Brianne M. Straka

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document is being filed under seal pursuant to the Protective Order entered in this matter.

By:   */s/ Brianne M. Straka*
Brianne M. Straka