# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| FINESSE WIRELESS, LLC | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CASE NO. 2:21-CV-00316-JRG |
| | § | (Lead Case) |
| AT&T MOBILITY, LLC, AND | § | |
| | § | |
| CELLCO PARTNERSHIP d/b/a | § | |
| VERIZON WIRELESS | § | |
| | § | |
| Defendants, | § | |
| | § | CASE NO. 2:21-CV-00317-JRG |
| NOKIA OF AMERICA CORP. | § | (Member Case) |
| | § | |
| | § | |
| | § | |
| Intervenor-Defendants. | § | |

**DEFENDANTS' SUR-REPLY TO PLAINTIFF FINESSE WIRELESS, LLC'S MOTION TO EXCLUDE AND STRIKE CERTAIN OPINIONS OF DR. BECKER**

i

Finesse's reply does not rebut the key reasons to deny its motion to exclude Dr. Becker's opinions discussing four documents produced with his report. ***First,*** there is good reason the information was not produced earlier. Indeed, one of the documents Finesse seeks to exclude—the ▬▬▬▬▬▬▬▬▬▬—did not previously exist and could not have been produced earlier. The other three documents were custom reports created at Dr. Becker's request in response to Finesse's novel damages model based on alleged spectrum savings. ***Second,*** the information is important because it rebuts Finesse's damages expert's opinion that Defendants could "salvage" spectrum by using the alleged invention, despite this "salvaging" theory—which was not disclosed during fact discovery—being unsupported by any testimony or documents. ***Third,*** there is no harm to Finesse. Finesse fails to rebut the facts in Defendants' response, which showed that Finesse has had ample opportunity to address the four documents at issue. Finesse does not cite any case law supporting exclusion under circumstances like this, and it should not be allowed to present its expert's unfounded assumptions to the jury while shielding information that disproves them. Finally, the IV documents that Finesse moves to exclude are highly relevant to show Finesse's positions regarding value of the asserted patents, and they are not hearsay (they are business records showing admissions by a party opponent).

A. <u>Finesse did not ask for these documents during fact discovery.</u>

Finesse's lead argument in reply is simply wrong: it did not "specifically request" the materials at issue. The July 2021 letter Finesse cites requested 74 sweeping categories of documents (plus an additional 30 subcategories) concerning a non-exhaustive list of more than 50 different devices in AT&T's entire nationwide network. *See* Ex. R, Finesse Infringement Contentions from 2:21-CV-00063-JRG at 3. Finesse identified the three broad requests about "incremental benefit" (Requests 54, 65, and 66 (Dkt. 130-2) at 13-15). Request 66 is irrelevant because it only covers documents AT&T received from Ericsson or Nokia, and request 65 lists

1

████████████████████████████████████████

essentially every single claim term and then requests any documents concerning their incremental benefit. *Id.* The only request that mentions spectral efficiency is 54, and that request covers "all documents" reflecting "incremental revenue, data rates, and/or spectral efficiency" provided by the accused products. None of these request the documents at issue. First, ████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ i.e., it does not show "incremental" benefit. Second, the ████████████████ ████████████████████████████████████████████████████████████████████████ ████—again, not responsive to the "incremental benefit" requests. Third, the ████████ ████████████████████████████████████████████████████████. Because AT&T both ████████████████████████████████ this also does not reflect any "incremental benefit" of the invention. Finally, the September 2022 testing did not exist at the time.

Finesse's subsequent discovery requests similarly did not call for production of the four documents at issue. By email on July 6, 2022, Finesse asked AT&T to produce certain performance data, "segregated by PIM/No PIM/PIM w/P614, etc. . . . by year and by census block from 2015 to the present," (Dkt. 130-4) as reflected in a document AT&T employee Mike Taylor created reflecting his ████████████████████████████████████████. Finesse argues that AT&T only looked for ████████████████████████ in response to this request, but this is baseless and incorrect. Indeed, it is undisputed that AT&T did produce all the testing data *for the Nokia radios* that existed during fact discovery. Finesse's request did *not* ask AT&T to conduct *more* testing. Finesse simply never asked for this information during discovery.

**2. Defendants' production was justified.**

Finesse's legal arguments for exclusion fail. Defendants *are* permitted to conduct expert

2

████████████████████████████████████████

testing during expert discovery.  *See* Response at 9.  ████████████████████████

████████████████ in the ordinary course of AT&T's business, before expert discovery, does not mean that more tests cannot be conducted during expert discovery.  Finesse also cites to no case law supporting its argument that such testing is only permissible if the plaintiff can also conduct such testing.  The issue is simply whether Rule 37 requires exclusion of testing during expert discovery, and the case law is clear it does not.  *See, e.g.*, *id*. at 8-10; *see also Int'l Bus. Mach. Corp. v. Priceline Grp. Inc.*, 271 F. Supp. 3d 667, 684 (D. Del. 2017).

The timing of the three custom reports, in response to requests from Defendants' damages expert to rebut Finesse's damages theory first disclosed in its expert report, was also proper. Defendants could not have anticipated Finesse's novel "salvaged spectrum" damages theory, particularly when no one—not even the patent inventor—identified "salvaged spectrum" as a benefit of the patents. Defendants requested Finesse's damages theory during fact discovery, but Finesse refused to respond. Dkt. 155, Ex. J, Plaintiff Finesse Wireless, LLC's Resp. and Obj. to Nokia's First Set of Indiv. Interrogatories at No. 7. Furthermore, Dr. Bazelon opined that "spectrum is more constrained on the ***DL*** channel, and therefore its value is mostly driven by ***downlink*** capacity," yet he opined that PIM-C primarily affects the ***uplink***. Ex. Q, Bazelon Rep. ¶61 ("measures of PIM and related KPI degradation are more directly reflected in uplink (UL) centric KPI") (emphasis added). As such, there is no way that Defendants could have expected Dr. Bazelon to make the admittedly "indirect" connection between spectrum and PIM-C. *Id.* ¶39 ("DL KPIs are affected indirectly by the degradation of UL KPIs").

B. <u>**The information is undisputedly important.**</u>

Finesse does not dispute that the information is important.  Reply at 5.  That "[t]here is plenty [Dr. Becker] can still say," as Finesse proclaims, would be true in any complex litigation and is no justification for excluding the documents.  Finesse attempts to conflate this factor with

3

the prejudice factor, but the reason this factor matters is that the jury should hear important evidence. *See Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007).

C.     **There is no prejudice to Finesse.**

Defendants' opposition explains why the timing of the production of these four documents did not prejudice Finesse. *See* Response at 3-8, 11-13. In reply, Finesse conspicuously omits (for a second time) what prejudice it has suffered. *See* Reply at 5. Finesse obliquely raises ████████ ██████, but fails to show why such data matters. T██████████████████████ █████████████████████████████████████████████████████████ ████████████████████████████ *See Peals v. QuikTrip Corp.*, No. 4:20-CV-22-KPJ, 2021 WL 2043185, at *5 (E.D. Tex. May 21, 2021) ("A corporation under a duty to preserve is not required to keep every shred of paper, every e-mail or electronic document, and every backup tape . . . . In essence, the duty to preserve . . . applies to unique relevant evidence that might be useful to the adversary."). Neither infringement nor damages turns on daily performance data in 2020 or earlier, as opposed to 2021 or later, and Finesse makes no attempt to even argue why this kind of detailed earlier data would be relevant.

Finesse's claimed prejudice boils down to its argument that Defendants' production of an expert testing document and three custom reports with its rebuttal reports "is not the way discovery is to be conducted." Reply at 5. But that ignores both the nature of the materials and the four-part inquiry the law requires when considering whether even untimely evidence should be excluded. Finesse fails to provide any substantive reason it could not cure any purported prejudice through examination of the evidence and a supplement to Dr. Bazelon's report—both of which it has already had ample opportunity to do. *See* Response at 11-13; *Texas A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003) (holding that "any prejudice was cured" because the non-producing party was "allowed to examine and respond to the contested

4

evidence"). All factors favor the jury hearing this evidence.

**D.      Intellectual Ventures' Negotiation Records Are Admissible**

Finesse does not dispute that the IV documents are admissible as an opposing party's statement under Fed. R. Evid 801(d)(2). Finesse instead argues that its own statements about the asserted patents' value are allegedly irrelevant. Reply at 6. But these written records directly contradict Finesse's oral testimony and are clearly relevant to damages. The single case that Finesse cites for its relevance argument, *Mondis Tech. Ltd., v. LG Elec., Inc.*, No. 2:07-CV-565-TJW-CE, 2011 WL 1714304, at * 5 (E.D. Tex. May 4, 2011), *supports* Defendants' position. There, the court ordered production of documents relating to a meeting between the plaintiff and a third party, where they had been "negotiating the sale of patents." *Id.* So too here. Although that court refused to order production of certain "ongoing or unconsummated settlement and licensing negotiations," the court reasoned that "one party in the negotiation may be puffing by making certain communications" and that "the concern of a chilling effect on settlement negotiations is potentially even greater when the settlement negotiations are still in progress." *Id.* at *5. Puffing is not a concern here because it is *Finesse* trying to exclude the negotiations, not Defendants. Nor is there a chilling effect, as these were not settlement negotiations.

Finesse argues that the IV documents are a "person's personal habit" rather than a business record, citing *U.S. v. Robinson*, 702 F.2d 205, 210 (5th Cir. 1983), but this is factually incorrect because IV's declaration states that the records were "made with the regularly conducted activity as a regular practice." Dkt. 155, Ex. O. Finesse also complains that IV submitted a revised declaration to satisfy the requirements of 28 U.S.C. 1746, but there is no prejudice to Finesse for correcting Finesse's administrative complaint regarding execution.

DATED: November 14, 2022                    Respectfully submitted,

          By: */s/ Jeffery S. Becker*
          Douglas M. Kubehl
          State Bar Number 00796909
          Email: doug.kubehl@bakerbotts.com
          Jeffery Scott Becker
          State Bar Number 24069354
          Email: jeff.becker@bakerbotts.com
          Susan Cannon Kennedy
          State Bar Number 24069354
          Email: susan.kennedy@bakerbotts.com
          **Baker Botts L.L.P.**
          2001 Ross Avenue, Suite 900
          Dallas, TX 75201
          Telephone: (214) 953-6500
          Facsimile: (214) 661-6503

          Brandon Chen
          State Bar Number 24095814
          Email: brandon.chen@bakerbotts.com
          **Baker Botts L.L.P.**
          910 Louisiana Street, Suite 3200
          Houston, TX 77002
          Telephone: (713) 229-1611
          Facsimile: (713) 229-2811

          Deron R. Dacus
          Texas Bar No. 00790553 Email:
          ddacus@dacusfirm.com
          **THE DACUS LAW FIRM, P.C.**
          821 ESE Loop 323, Suite 430
          Tyler, TX 75701
          Phone: (903) 705-1171
          Fax: (903) 581-2543

          **ATTORNEYS FOR DEFENDANT**
          **AT&T MOBILITY LLC**


          By: */s/ Ross R. Barton*
          Ross R. Barton (NC Bar No. 37179)
          J. Ravindra Fernando (NC Bar No. 49199)
          **ALSTON & BIRD LLP**
          101 South Tyron Street, Suite 4000
          Charlotte, North Carolina, 28280
          Phone: (704) 444-1000

Fax: (704) 444-1111
Email: ross.barton@alston.com
Email: ravi.fernando@alston.com

Adam Ahnhut (TX Bar No. 24106983)
**ALSTON & BIRD LLP**
Chase Tower
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
Telephone: 214-922-3400
Facsimile: 214-922-3899
Email: adam.ahnhut@alston.com

Deron R. Dacus (Texas Bar No. 00790553)
**THE DACUS LAW FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1171
Fax: (903) 581-2543
Email: ddacus@dacusfirm.com

**ATTORNEYS FOR DEFENDANT CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS**

By: */s/ Brianne M. Straka*
Scott Cole (State Bar No. 00790481)
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
201 West 5th Street 11th Floor
Austin, Texas 78701
(713) 221-7006
(737) 667-6110 (facsimile)
scottcole@quinnemanuel.com

David A. Nelson
Brianne M. Straka
Marc Kaplan (IL State Bar No. 6303652)
Rajat Khanna (IL State Bar No. 6317120)
Harrison B. Rose (IL State Bar No. 6327523)
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
191 N. Wacker Dr., Suite 2700
Chicago, IL 60606
(312) 705-7400

(312) 705-7401 (Facsimile)
davenelson@quinnemanuel.com
briannestraka@quinnemanuel.com
marckaplan@quinnemanuel.com
rajatkhanna@quinnemanuel.com
harrisonrose@quinnemanuel.com

Michael E. Jones (State Bar No. 10929400_
**POTTER MINTON, P.C.**
110 N. College Ave., Suite 500
Tyler, Texas 75702
Tel: (903) 597-8311
Fax: (903) 593-0846
mikejones@potterminton.com

**ATTORNEYS FOR INTERVENOR NOKIA OF AMERICA CORPORATION**

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record are being served this 14th day of November, 2022, with a copy of this document via email.

By: /s/ *Brianne M. Straka*
Brianne M. Straka

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is being filed under seal pursuant to the Protective Order entered in this matter.

By: /s/ *Brianne M. Straka*
Brianne M. Straka