IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| FINESSE WIRELESS, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | CASE NO. 2:21-CV-00316-JRG |
| v. | § | (LEAD CASE) |
| | § | |
| AT&T MOBILITY, LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**PROPOSED FINAL JURY INSTRUCTIONS**[1]

---

[1] **Finesse**: Unless otherwise noted, these proposed final jury instructions are taken from the Conference Version of the Final Jury Instructions provided to counsel for the parties in *Koninklijke KPN N.V. v. Telefonaktiebolaget LM Ericsson*, No. 2:21-cv-113-JRG (E.D. Tex.) (hereinafter "*KPN v. Ericsson*"). Where there are disagreements, Plaintiff's proposals are highlighted in yellow and Defendants' proposals are highlight in blue.

# **Contents**

1.  Introduction ....................................................................................................................4

    1.1   Introduction to Jury Instructions ...............................................................4

    1.2   Statements of the Court and Counsel .........................................................4

    1.3   Verdict Form and Procedure ......................................................................4

2.  Considering the Evidence ..............................................................................................5

    2.1   Credibility of Witnesses and Evidence ......................................................5

    2.2   Objections of Counsel ...............................................................................5

    2.3   Direct and Circumstantial Evidence ..........................................................6

    2.4   Stipulated Facts ........................................................................................6

    2.5   Testimony by Deposition ...........................................................................7

    2.6   Reasonable Inferences from Evidence .......................................................7

    2.7   Sufficiency of Testimony ...........................................................................7

    2.8   Expert Witnesses ......................................................................................8

    2.9   Demonstratives .........................................................................................8

3.  Burdens of Proof ............................................................................................................9

4.  Summary of the Positions of the Parties ......................................................................11

5.  Claims and Claim Construction ...................................................................................13

6.  Infringement.................................................................................................................17

    6.1   Direct Infringement .................................................................................17

    6.2   Means-Plus-Function ..............................................................................20

    6.3   Doctrine of Equivalents ...........................................................................21

7.  Invalidity .....................................................................................................................24

    7.1   Invalidity – Burden of Proof ....................................................................24

    7.2   Prior Art ..................................................................................................24

7.3     Obviousness ...................................................................................................25

8.      Patent Damages...............................................................................................28

    8.1     Patent Damages – Introduction ..............................................................28

            [8.1.1    Indemnity]…………………………………………………33

    8.2     Reasonable Royalty ...............................................................................30

    [8.3    Non-Infringing Substitutes·].................................................................36

    FINAL JURY INSTRUCTIONS (CONTINUED) ........................................................38

## 1.    Introduction

### 1.1    Introduction to Jury Instructions

Ladies and Gentlemen of the Jury: You've now heard the evidence in this case.  I will now instruct you on the law that you must apply.

Each of you will have a copy of these final jury instructions that I am about to give you orally.  You will have these instructions for your review when you retire to deliberate in a few minutes.  Accordingly, there is no need for you to take written notes on these final jury instructions unless you particularly want to do so.

### 1.2    Statements of the Court and Counsel

It is your duty to follow the law as I give it to you.  On the other hand, as I have said, you, the jury, are the sole judges of the facts in this case.  Do not consider any statement that I have made in the course of the trial or may make in the course of these instructions as an indication that I have any opinion about the facts in this case.  You are about to hear closing arguments from the attorneys for both of the parties.  Statements and arguments of the attorneys are not evidence, and they are not instructions on the law.  They are intended only to assist the jury in understanding the evidence and the parties' contentions.

### 1.3    Verdict Form and Procedure

A verdict form has been prepared for you.  You will take this form to the jury room, and when you have reached a unanimous agreement as to your verdict, you will have your foreperson fill in the blanks in that form, date it, and sign it.  Answer the questions as directed in the verdict form from the facts as you find them to be.  Do not decide who you think should win and then answer the questions to reach that result.  Your answers and your verdict must be unanimous.

**2.    Considering the Evidence**

**2.1    Credibility of Witnesses and Evidence**

In determining whether any fact has been proven in this case, you may, unless otherwise instructed, consider the testimony of all of the witnesses, regardless of who may have called them, the stipulations of the parties, and you may consider all the exhibits received and admitted into evidence, regardless of who may have introduced them.

You, the jurors, are the sole judges of the credibility of all witnesses and the weight and effect of all of the evidence. In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider a witness's manner and demeanor on the witness stand, any feelings or interest they may have in the case, any prejudice or bias about the case that the witness may have, and the consistency or inconsistency of their testimony, considered in light of the circumstances. Has the witness been contradicted by other evidence? Has he or she made statements at other times and places contrary to what he or she said on the witness stand? You must give the testimony of each witness the amount of credibility that you think it deserves.

You must also keep in mind, ladies and gentlemen, that a simple mistake does not mean that a witness is not telling the truth. You must consider whether any misstatement was an intentional falsehood or a simple lapse in memory and what significance should be attached to that testimony.

**2.2    Objections of Counsel**

As I have told you previously, the attorneys in this case are advocates for their competing clients, and they have a duty to object when they believe evidence is offered that should not be

admitted under the rules of this Court.  When the Court sustained an objection to a question addressed to a witness, you must disregard that question entirely, and you may draw no inference from its wording or speculate about what the witness would have said if he or she had been permitted to answer.  If the objection was overruled, then you may treat the answer to that question just as you would treat the answer to any other question as if the objection had not been made.  By allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.

Now, at times during the trial it was necessary for the Court to talk with the lawyers outside of your hearing at the bench, or by calling a recess and talking to them while you were out of the courtroom.  This happened because often during a trial, something comes up that does not involve the jury.  You should not speculate about what was said during such discussions that took place outside of your presence.

### 2.3    Direct and Circumstantial Evidence

There are two types of evidence that you may consider in properly finding the truth as to the facts in this case.  One is direct evidence, such as testimony of an eyewitness.  The other is indirect or circumstantial evidence, that is, the proof of a chain of circumstances that indicates the existence or non-existence of certain other facts.  As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that you find the facts based on the evidence presented, both direct and circumstantial.

### 2.4    Stipulated Facts

The parties have stipulated or agreed to some facts in this case.  When the lawyers on both sides stipulate as to the existence of a fact, then you must, unless otherwise instructed, accept the stipulation as evidence and regard that fact as proven.

### 2.5    Testimony by Deposition

Certain testimony in this case has been presented to you through depositions.  A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial.

If a witness cannot be present to testify in person from the witness stand, the witness's testimony may be presented under oath in the form of a deposition.  Before this trial, attorneys representing the parties in this case questioned these deposition witnesses under oath.  A court reporter was present and recorded the testimony.  Deposition testimony is entitled to the same consideration as testimony given by a witness in person from the witness stand.  Accordingly, you should determine the credibility and importance of deposition testimony, to the best of your ability, just as if the witness had testified in court in person.

### 2.6    Reasonable Inferences from Evidence

Now, while you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in light of common experience.  In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.  However, you should not base your decision on any evidence not presented by the parties during this case.

### 2.7    Sufficiency of Testimony

Unless I instruct you otherwise, you may properly determine that the testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all of the evidence, you believe that single witness.

### 2.8    Expert Witnesses

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—called an "expert witness"—is permitted to state his or her opinion on those technical matters.  However, you are not required to accept that opinion.  As with any other witness, it is solely up to you to decide whether to rely upon it or not.

### 2.9    Demonstratives

Certain exhibits shown to you during the trial were illustrations.  We call these types of exhibits "demonstrative exhibits" or "demonstratives."   Demonstrative exhibits are a party's description, picture, or model to describe something involved in this trial.  If your recollection of the evidence differs from the demonstratives, you should rely on your recollection.  Demonstrative exhibits are sometimes called "jury aides."  Demonstrative exhibits themselves are not evidence, but a witness's testimony concerning a demonstrative exhibit is evidence.  Demonstrative exhibits will not be available for you to view during your deliberations.

3.      **Burdens of Proof**

In any legal action, facts must be proven by a required amount of evidence known as the "burden of proof." The burden of proof in this case is on the Plaintiff for some issues and on the Defendants for other issues. There are two burdens of proof that you will apply in this case: "preponderance of the evidence" and "clear and convincing evidence."

The Plaintiff in this case, Finesse Wireless, LLC, which has been referred to as "Finesse" or "Plaintiff," has the burden of proving patent infringement by a preponderance of the evidence. Finesse also has the burden of proving damages for any patent infringement by a preponderance of the evidence. A preponderance of the evidence means evidence that persuades you that a claim is more probably true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony.

The Defendants in this case, which you have heard referred to throughout the trial as AT&T and Nokia, have the burden of proving invalidity of Finesse's patent claims by clear and convincing evidence. Clear and convincing evidence means evidence that produces in your mind an abiding conviction that the truth of the party's factual contentions is highly probable. Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard. If proof establishes in your mind an abiding conviction in the truth of the matter, then the clear and convincing evidence standard has been met.

Now, as I've previously told you, ladies and gentlemen, these two burdens of proof are not to be confused with the burden of proof known as "beyond a reasonable doubt," which is the burden of proof applied in a criminal case, not in a civil case such as this. Beyond a reasonable

doubt is a higher standard than both the preponderance of the evidence and clear and convincing evidence standards.

In determining whether any fact has been proved by a preponderance of the evidence or by clear and convincing evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of the witnesses, regardless of who called them, and all of the evidence—including all of the exhibits received into evidence during the course of the trial, regardless of who may have produced them.

**4.      Summary of the Positions of the Parties**

As I did at the start of the case, I will first give you a summary of each side's contentions in this case.  I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.  As I previously told you, this is an action for patent infringement. Finesse contends that AT&T infringes certain claims of the patents-in-suit.  Remember, there are two patents-in-suit or "Asserted Patents."  They are U.S. Patent Number 7,346,134, which you have heard referred to as the "'134 Patent," and U.S. Patent Number 9,548,775, which you have heard referred to as the "'775 Patent."

Finesse contends that AT&T infringes the following claims of the patents-in-suit: Claims 1, 2, and 3 of the '134 Patent and Claims 1, 4, 9, 16, 21, 29, and 36 of the '775 Patent.  These are the "asserted claims."  Finesse contends that AT&T has infringed the asserted claims by [making, using, selling, importing, or offering for sale][2] / [using][3] in the United States [its mobile network, including, for example, all base station equipment and components that incorporate Nokia technology such as that found in remote radio heads implementing GROOT code including, for example, the following models: AHFIB, AHLBA, and AHLBBA] [the following Nokia accused products:  Nokia remote radio heads sold under the following specific model numbers:  AHFIB, AHLBA, and AHLBBA.]

---

[2]  **Finesse's position**:  Finesse contends that AT&T is infringing through its mobile network. Finesse does not concede that the only form of infringement here is use; for example, AT&T offers for sale and sells access to its infringing mobile network.

[3]  **Defendants' position:** Finesse has not accused "selling" or "offering for sale" AT&T's mobile network as the infringing act in its expert reports, and it is improper for it to now raise this issue in jury instructions. As a matter of common sense, neither AT&T does not "sell" or "offer for sale" its networks to customers, otherwise it would not have a network to offer for sale to each of its other customers.  Selling "access" to a network is not an infringing act under 35 USC 271. Accordingly, an instruction suggesting that AT&T infringes by selling accused products is misleading, contrary to law, and should be omitted.

I will refer to these as the "Accused Products."  Finesse contends that it is entitled to money damages in the form of a reasonable royalty for AT&T's infringement.  Finesse has the burden to prove these issues by a preponderance of the evidence.

AT&T denies that it infringes any of the asserted claims.  AT&T denies that [it makes, uses, offers for sale, sells, or imports][4] / [its use of][5] any Accused Product that infringes any of the asserted claims.  Nokia denies that its products infringe any of the asserted claims.

Defendants also contend that the asserted claims of the '134 and '775 Patents are invalid because they are obvious based on two combinations of certain prior art.  Invalidity is a defense to infringement.  Defendants have the burden to prove invalidity by clear and convincing evidence.

Invalidity and infringement are separate and distinct issues.  Your job is to decide whether AT&T has infringed the asserted claims and whether those claims are invalid.  If you decide that any asserted claim is valid and has been infringed, you will then need to decide the amount of money damages, if any, to be awarded to Finesse to compensate it for the infringement.  AT&T denies that Finesse is entitled to any money damages.

---

[4] **Finesse's position**:  Finesse contends that AT&T is infringing through its mobile networks. Finesse does not concede that the only form of infringement here is use; for example, AT&T offers for sale and sells access to its infringing mobile network.

[5] **Defendants' position:** Finesse has not accused AT&T's mobile network of infringement in its expert reports, and it is improper for it to raise this issue here. Finesse accuses "Nokia devices and systems" of infringing the asserted claims—not AT&T's mobile network.  AT&T does not sell the accused Nokia PIM-C devices and systems to its customers.   Accordingly, an instruction suggesting that AT&T infringes by selling accused products is misleading and should be omitted.

**5.    Claims and Claim Construction**

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case.  I'll now give you more detailed instructions about the patent laws that relate to this case.

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."  The patent claims are the numbered sentences at the end of each patent.  The claims are important because it is the words of the claims that define what a patent covers.

The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims themselves that define the breadth of the patent's coverage.

Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim.  Therefore, what a patent covers depends, in turn, on what each of its claims covers.

To know what a claim covers, a claim sets forth, in words, a set of requirements.  The requirements of a claim are often referred to as "claim elements" or "claim limitations."  For example, a claim that covers an invention of a table may recite a tabletop, four legs, and the glue that secures the legs to the tabletop. In this example, the tabletop, legs, and glue are each separate limitations of the claim.

The coverage of a patent is assessed claim-by-claim.  When a product meets all of the requirements of a claim, the claim is said to "cover" that product, and that product is said to "fall" within the scope of that claim.  In other words, a claim covers a product where each of the claim elements or limitations is present in that product.  If a product is missing even one limitation or

element of a claim, the product is not covered by the claim.  If the product is not covered by the claim, that product cannot infringe that claim.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid.  The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case.  Therefore, as I explained to you at the start of the case, I have determined the meaning of the claims, and I have provided to you my definitions of certain claim terms.  These definitions can be found in your juror notebooks.  You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and invalidity.

You should disregard any evidence presented at trial that contradicts or is inconsistent with the constructions and definitions that I have given you.  For claim limitations that I have not construed—that is, limitations that I have not interpreted or defined—you are to use the plain and ordinary meaning of these limitations as understood by one of ordinary skill in the art, which is to say, in the field of technology of the patent at the time of the alleged invention.  The meaning of the words of the patent claims must be the same when deciding both infringement and invalidity. You have been provided with copies of the Asserted Patents, which are inside your juror notebooks, and you may use them in your deliberations.  You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity.  These issues are yours to decide.

Several times in my instructions, I have referred or will refer to a person of ordinary skill in the field of the invention, or a person of ordinary skill in the art.  In deciding the level of

ordinary skill in the field, you should consider all of the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of persons actively working in the field; (2) the types of problems encountered in the field; (3) previous solutions to those problems; (4) the rapidity with which innovations are made; and (5) the sophistication of the technology.  A person of ordinary skill in the art is a hypothetical person who is presumed to have known all of the relevant prior art at the time of the claimed invention.

The beginning portion, or preamble, of a claim often uses the word "comprising."  The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to."  When "comprising" is used in the preamble, if you decide that an Accused Product includes all of the requirements of that claim, the claim is infringed.  This is true even if the Accused Product contains additional elements.

For example, a claim to a table comprising a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs, and glue, even if the table also contains other structures, such as leaves that would go in the tabletop or wheels that would go on the ends of the legs.

For the '134 Patent, two of the asserted claims—claims 2 and 3—include limitations that are in a special form called means-plus-function format.  These claims do not cover all of the structures that could perform the function set forth in the claim.  Instead, they cover a structure or set of structures that perform that function and that is either identical or "equivalent" to the structures described in the patent for performing the function.  The issue of whether two structures are identical or equivalent is for you to decide.  I will explain to you later how to determine whether two structures or two sets of structures are "equivalent" to one another.  For purposes of this case, I have identified the structures described in the '134 Patent that perform the claimed functions.  These are contained in the claim constructions which I have provided to

you in your juror notebooks.  You should apply my definition of the function and the structures described in the '134 Patent for performing that function the same way you would apply my definition of any other claim term.

This case involves two types of patent claims: independent claims and dependent claims. In this case, Claims 1, 2 and 3 of the '134 Patent and Claims 1, 4, 16, 21, and 36 of the '775 Patent are independent claims.  Claims 9 and 29 of the '775 Patent are dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim.  Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements.  In this way, the claim "depends" on another claim.  A dependent claim incorporates all of the requirements of the claim to which it refers or, stated alternatively, from which it depends.  The dependent claim then adds its own additional requirements.  To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim to which it refers.  A product that meets all of the requirements of both the dependent claim and the claim to which it refers is covered by that dependent claim.

6.    **Infringement**

I will now instruct you how to decide whether or not Finesse has proven that AT&T has infringed any of the asserted claims of the Asserted Patents.

If a person or company makes, uses, sells, or offers to sell within the United States, or imports into the United States what is covered by a patent claim without the patent owner's permission, that person or company is said to infringe the patent claim.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed.  Infringement is assessed on a claim-by-claim basis.  Therefore, there may be infringement as to one claim but no infringement as to another.  You must compare the asserted patent claims, as I have construed each of them, to the Accused Products, and determine whether or not there is infringement.  This is the only correct comparison.

You should not compare the Accused Products to any specific examples set out in the patent, the prior art, or Finesse's own products, prototypes, or marketing plans in reaching your decision on infringement.  In deciding infringement, the only correct comparison is between the Accused Products and the limitations of the claims as the Court has construed them.  You must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by both of the parties.

6.1    **Direct Infringement**

Here, Finesse asserts that AT&T has directly infringed the asserted claims of the patents-in-suit.  AT&T is liable for direct infringement if you find that Finesse has proven that it is more likely than not that AT&T made, used, imported, offered to sell, or sold the invention defined in at least one claim of Finesse's patents in the United States.

A patent can be directly infringed even if the alleged direct infringer did not have knowledge of the patent and without the direct infringer knowing that what it did was infringing the claim.  A patent may also be directly infringed even though the accused direct infringer believed in good faith that what it did was not infringing the patent.  [Infringement does not require proof that a party copied its product from the asserted claims.][6,7]

---

[6] **Finesse's position**: This language has been included in jury instructions given in this Court's most recent cases, including *KPN v. Ericsson*.  Final Jury Instructions at 12 (handout to counsel), *KPN v. Ericsson*, No. 2:21-cv-113-JRG (E.D. Tex.); Trial Tr. at 73:1-2, *Seagen, Inc. v. Daiichi Sankyo Co., Ltd.*, No. 2:20-cv-337-JRG, Dkt. 378 (E.D. Tex. Apr. 13, 2022) (same instruction).

Finesse notes that the Court granted and entered its proposed motion *in limine* addressing both copying and independent creation:  "No party will introduce evidence, testimony, argument, or suggestion that characterizes any other person or entity's actions as "stealing," "copying," "misappropriating," "pirating," "trespassing," or any similar terms.  Likewise, no party will introduce any evidence, testimony, argument, or suggestion that Defendants engaged in copying of the asserted patents, that copying is required to prove infringement, or that any Defendant independently invented the subject matter claimed in the asserted patents."  Defendants objected to the last sentence of the proposal and stated that "the Court will instruct the jury on the requirements to prove infringement and therefore there appears to be no need to add additional MILs regarding copying."  Defendants also stated that independent invention by them may be "relevant to invalidity" without further specification.

Because Finesse believes that Defendants have introduced evidence and argument suggesting that Defendants independently invented the subject matter or that Defendants did not copy Finesse's prototypes or patents, Finesse believes such an instruction is appropriate to prevent jury confusion.

[7]  **Defendants' position**: Finesse won a motion *in limine* on this same issue.  The Court ordered that "no party will introduce any evidence, testimony, argument, or suggestion that Defendants engaged in copying of the asserted patents, that copying is required to prove infringement, or that any Defendant independently invented the subject matter claimed in the asserted patents." Finesse has not lodged any objection at trial to any purported violation of this ruling or pointed to any specific testimony or argument in its position above. Its proposed language is unnecessary, and this instruction is not present in several of this Court's recent cases. *See e.g.*, Trial Transcript, *Optis Wireless Technology, LLC v. Apple Inc.*, No. 2:19- cv-00066-JRG, Dkt. 520 (E.D. Tex. Aug. 12, 2020); Trial Transcript, *PPS Data, LLC v. Jack Henry & Associates, Inc.*, No. 2:18-cv-00007-JRG, Dkt. 175 (E.D. Tex. Sep. 13, 2019); Trial Transcript, *United Services Automobile Association v. Wells Fargo Bank, N.A.*, No. 2:18-cv- 00245-JRG, Dkt. 335 (E.D. Tex. Nov. 7, 2019).  As Finesse has noted *supra*, the *KPN* case involved willfulness allegations, rendering proof of copying relevant and potentially at issue for willful infringement, which would necessitate the instruction. Willfulness is not at issue here, and therefore there is no need for this instruction.

You must determine, separately for each asserted claim, whether or not there is infringement. However, if you find that an independent claim on which other claims depend is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the product meets additional requirements of any claims that depend from the independent claim; that is, whether those claims have also been infringed. A dependent claim includes all of the requirements of any of the claims to which it refers plus additional requirements of its own.

In order to prove direct infringement of a patent claim, Finesse must show by a preponderance of the evidence that the Accused Products include each and every limitation of the claim. In determining whether the Accused Products directly infringe a patent claim in this case, you must compare the Accused Products with each and every one of the requirements or limitations of that claim to determine whether the Accused Products contain each and every requirement or limitation recited in the claim. An Accused Product infringes a claim if it satisfies each of the claim elements, even though it may also be capable of non-infringing modes of operation.

A claim requirement is literally present if it exists in an Accused Product just as it is described in the claim language, either as I have explained the language to you or, if I did not explain it, as it would be understood by its plain and ordinary meaning to one of ordinary skill in the art. The same element of an Accused Product may satisfy more than one element of a patent

---

As Finesse admits, Defendants' patents are at issue for prior art, and therefore Defendants should not be precluded from arguing that Defendants' prior art disclosed the claim invention prior to the asserted patents. However, Finesse does not link the existence of Defendants' prior art to any need for this instruction, and the issues do not appear related. The fact that Defendants disclosed prior art does not indicate that "copying" of the invention is required to prove infringement.

claim.  However, if an Accused Product omits any element recited in a claim, then you must find that the product in question does not literally infringe that claim.

### 6.2    Means-Plus-Function

As I have previously explained, Claims 2 and 3 of the '134 Patent include requirements that are in means-plus-function form.

A product meets a means-plus-function requirement of a claim if: (1) it includes a structure or a set of structures that perform the identical function recited in the claim, and (2) that structure or set of structures is either identical or "equivalent" to the described structures in the '134 Patent that I defined in your juror notebooks as performing the functions set out in the asserted claims of the '134 Patent.  If the Accused Products do not perform the specific function recited in the claim, the "means-plus-function" requirement is not met, and the products do not literally infringe the claim.  Alternatively, even if the product has a structure that performs the function recited in the claim but the structure is neither identical nor "equivalent" to the structure that I defined for you as being described in the '134 Patent and performing this function, the product does not literally infringe the asserted claim.

A structure or a set of structures may be found to be "equivalent" to one of the structures or sets of structures I have defined as being described in the '134 Patent if a person having ordinary skill in the field of technology of the '134 Patent either would have considered the differences between them to be insubstantial at the time the '134 Patent issued or if that person would have found the structures performed the function in substantially the same way to accomplish substantially the same result.  In deciding whether the differences would be "insubstantial," you may consider whether a person having an ordinary level of skill in the field of technology of the '134 Patent would have known of the interchangeability of the two structures or sets of structures

at the time the patent issued. The fact that a structure or a set of structures is known to be "equivalent" today is not enough. The structure or set of structures must also have been available at the time the '134 Patent issued.

In order to prove direct infringement of a means-plus-function limitation, Finesse must prove the above requirements are met by a preponderance of the evidence.

### 6.3 Doctrine of Equivalents[8]

If a company makes, uses, sells, offers to sell within, or imports into the United States a product or process that does not literally meet all of the elements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that product or process satisfies that claim elements "under the doctrine of equivalents." Here, only the means plus function claim elements are alleged to be infringe under the doctrine of equivalents.

Under the doctrine of equivalents, a product infringes a claim if the accused product contains elements or performs steps that literally meet or are equivalent to each and every element of the claim. You may find that an element or step is equivalent to an element of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the structure or action: (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the element of the claim. In order to prove infringement by "equivalents," Finesse must prove the equivalence of the structure or action to the claim element by a preponderance of the evidence. Thus, each element of a claim must be met by

---

[8] **Finesse**: While the majority of these draft instructions come from the *KPN v. Ericsson* case, this section is adapted from the Federal Circuit Bar Association's instructions, under B.3.1c ("Direct Infringement under the Doctrine of Equivalents").

the accused product either literally or under the doctrine of equivalents for you to find infringement.

[When the claim element that is not literally met by the product is a "means-plus-function" element, and if you determined that there is no "literal infringement" because there is no structure or set of structures in the product that performs the identical function of the means-plus-function element, you may decide that the structure nonetheless corresponds to the element of the claim under the doctrine of equivalents if it performs an "equivalent" function and has an "equivalent" structure.][9]

[Only if you find both that Nokia's product has the same or equivalent claimed structure for performing the specific claimed function can you find that the claim containing the means-plus-function limitation is infringed. If you find that either the recited structure is not performed or that the structure in Nokia's product that performs this specific function is not the same and is not equivalent, you must find that the claim containing the means-plus-function limitation is not infringed.][10]

---

[9] **Finesse's position**:  This language comes from the Federal Circuit Bar Association's instructions, under B.3.1c ("Direct Infringement under the Doctrine of Equivalents").  Finesse disagrees that Defendants' suggestions before and after Finesse's proposal are more clear: it includes complex sentences with multiple conditions, begins with the word "only" and then provides the contrary, and it clashes with the way that the instructions from the Federal Circuit Bar Association read.  Because these are inconsistent formats, they are likely to confuse the jury. (For example, Defendants propose paragraphs beginning "Only if" and "On the other hand" from different sets of instructions, which may lead a jury to misinterpret what those instructions mean.)

[10] **Defendant's position**:  this paragraph is adapted from the 2018 AIPLA Model Patent Jury Instructions § 3.4 and the authorities cited therein, including 35 U.S.C. § 112; *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) (en banc); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1457 (Fed. Cir. 1998) (en banc); *In re Donaldson Co., Inc.*, 16 F.3d 1189, 1193 & 1195 (Fed. Cir. 1994) (en banc); *Chicago Bd. Options Exchange, Inc. v. Int'l Secs. Exchange, LLC*, 677 F.3d 1361, 1366-69 (Fed. Cir. 2012.  This alternative paragraph is proposed because it offers greater clarity than the equivalent portion of the Federal Circuit Bar Association model instructions.

[You may not determine that an alternative aspect of a product is equivalent to an unmet requirement of a claim if a finding of infringement under the doctrine of equivalents would effectively eliminate that requirement.  Specifically, the alleged equivalent cannot eliminate or ignore an element or requirement of the claim. In order to prove infringement by "equivalents," Finesse must prove the equivalency of the structure in the accused product to the asserted claims of the patents-in-suit.][11, 12]

---

[11] **Defendants' authority**: The additional items here are adapted from *Bio-Rad Labs., Inc. v. 10X Genomics, Inc*, No. 15-152-RGA, D.I. 470 (D. Del. Nov. 13, 2018) and The Federal Circuit Bar Association Model Patent Jury Instructions § B.3 at 3.1d (2016). They are included as they are relevant to this case and can assist the jury in understanding equivalence. For example, Finesse's proposal does not address claim vitiation, which is clearly at issue here given the parties' summary judgment dispute over whether Finesse's broad accusations against analog to digital converters vitiate the claims' requirement of particular types of analog to digital converters. *See Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1280 (Fed. Cir. 2011); *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1570 (Fed. Cir. 1996).

[12] **Finesse's position**:  This instruction, cobbled together from different sources, is almost certain to confuse the jury.  And, in any event, the language here is unnecessary.  First, Defendants have not contended in this litigation that the Accused Products are non-infringing because they are covered by other patents—to the contrary, Defendants have argued that references to copying, for example, should be *limined* out by the Court—so it would be inappropriate for Defendants now to ask the jury to look for evidence of independent invention.  Second, it would be redundant to instruct the jury on claim vitiation—which Finesse disagrees is at issue anyway—because the agreed proposed instructions already clearly instruct the jury that "Under the doctrine of equivalents, a product infringes a claim if the accused product contains elements or performs steps that literally meet or are equivalent to each and every element of the claim."  Third, the instructions already refer plenty to the "preponderance of the evidence" standard, and repeating it here would imply to the jury that other parts of Finesse's burden are subject to a different standard.

7.    **Invalidity**

I will now instruct you on the rules you must follow in deciding whether or not Defendants have proven that any asserted claims of the patents-in-suit are invalid.

### 7.1    Invalidity – Burden of Proof

An issued United States patent is accorded a presumption of validity based on the presumption that the United States Patent and Trademark Office, which you've heard referred to throughout this trial as the "PTO" or sometimes just the "Patent Office," acted correctly in issuing the patent. This presumption of validity extends to all issued United States patents.

In order to overcome this presumption, Defendants must establish by clear and convincing evidence that a claim is invalid. Like infringement, invalidity is determined on a claim-by-claim basis. You must determine separately for each claim whether that claim is invalid. If one claim of a patent is invalid, this does not mean that any other claim is necessarily invalid.

Claims are construed in the same way for determining infringement as for determining invalidity. You must apply the claim language consistently and in the same manner for issues of infringement and for issues of invalidity. In making your determination as to invalidity, you should consider each claim separately.

### 7.2    Prior Art[13]

In order for someone to be entitled to a patent, the invention must actually be "new" and not obvious over what came before, which is referred to as the prior art. Prior art is considered in determining whether the asserted claims of the '134 and '775 Patents are obvious. Prior art may include items that were publicly known or that have been used or offered for sale, or references,

---

[13] **Finesse**: This section is adapted from the Federal Circuit Bar Association's instructions, under B.4.3a-1 ("Prior Art").

such as publications or patents, that disclose the claimed invention or elements of the claimed invention.

Defendants contend that the claims of the '134 patent are invalid through the combination of the Kim and Bazarjani patents, and that the claims of the '775 patent are invalid through the combination of the McCallister patent and the Lui reference. Just because Defendants identified these references are to be prior art, however, does not mean that they invalidate the patent. You must follow my instructions to determine whether Defendants proven that any combination of these references invalidate any of the asserted claims.

### 7.3    Obviousness[14]

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

Defendants may establish that a patent claim is invalid by proving, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made in the field of [wireless communications] / [communications systems design and signal processing.]

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of [wireless communications] / [communications systems design and signal processing] that someone would have had at the time the invention was made, the scope and content of the prior art, any differences between the prior art and the claimed invention, and, if

---

[14] **Finesse's Position**: This section is adapted from the Federal Circuit Bar Association's instructions, under B.4.3c ("Obviousness," "Level of Ordinary Skill," and "Scope and Content of the Prior Art").

present, so-called objective evidence or secondary considerations, which I will describe shortly. Do not use hindsight; consider only what was known at the time of the invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you should consider whether, at the time of the claimed invention, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in the prior art in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions. To find it rendered the claimed invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention is obvious, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether or not the claimed invention is obvious, such as: (a) whether the claimed invention satisfied a long-felt need; (b) whether there were changes or related technologies or market needs contemporaneous with the claimed invention; (c) whether the claimed invention achieved unexpected results; (d) whether others in the field praised the claimed invention; (e) whether

persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention; and (f) whether the inventor proceeded contrary to accepted wisdom in the field.

[Now, no one factor alone is dispositive, and you must consider the obviousness or non-obviousness of the inventions as a whole. These factors are relevant only if there is a connection or nexus between the factor and the asserted claims of the asserted patents. ][15, 16]

In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.

In deciding what the level of ordinary skill in the field of [wireless communications] / [communications systems design and signal processing] is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) the rapidity with which innovations are made; and (5) the sophistication of the technology.  [The person of ordinary skill in the art is presumed to be aware of all of the pertinent prior art.  A person of ordinary skill is also a person

---

[15]    **Defendants' authority**: Trial Transcript at 29:25-30:16, *SimpleAir*, (modified).  Finesse's proposed instruction entirely omits the requirement of a nexus, which is mandatory under Federal Circuit law when applying secondary considerations.  *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366 (Fed. Cir. 2019).

[16] **Finesse's position**:  Finesse has reviewed the Trial Transcript in *SimpleAir* but did not see the language here in connection with secondary considerations of non-obviousness.  The suggested language appears unnecessary because of its focus on "no one factor" and the invention "as a whole," which is already stated above in reference to the objective factors and secondary considerations of non-obviousness.

of ordinary creativity, not an automaton. Do not use hindsight; consider only what was known at the time of the inventions.][17, 18]

In considering whether the claimed invention was obvious at the time it was made, you should consider the scope and content of the prior art.

## 8.    Patent Damages

If you find that AT&T has infringed any valid claim of the Asserted Patents, you must then consider what amount of damages, if any, to award to Finesse.

### 8.1    Patent Damages – Introduction

I will now instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win this case, on any issue.  If you find that AT&T has not infringed any valid claim of the patents-in-suit, then Finesse is not entitled to any patent damages.

Finesse has the burden to establish the amount of its damages by a preponderance of the evidence.  In other words, you should award only those damages that Finesse establishes that it more likely than not suffered as a result of AT&T's infringement.  While Finesse is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty.  Finesse is not entitled to damages that are remote or that are only speculative.

---

[17]    **Defendants' authority**:  *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 420, 127 S. Ct. 1727, 1742, 167 L. Ed. 2d 705 (2007*); ZUP, LLC v. Nash Mfg., Inc.*, 896 F.3d 1365, 1373 n.2 (Fed. Cir. 2018); *Firtiva Corp. v. Funimation Glob. Grp., LLC*, 2022 WL 23165, at *3 (E.D. Tex. Jan. 3, 2022).  Finesse objects to this language as a dispute over the level of skill in the art, but this instruction describes a person of skill in the art and their creativity and knowledge, which is critical to the obviousness inquiry.

[18]    **Finesse's position**:  This language seems unnecessary to defining what the level of ordinary skill is.  Given that the jury is not being asked to determine what is and is not prior art, it does not seem necessary to include this language.

The damages you award, if any, must be adequate to compensate Finesse for any infringement you may find.  You must not award Finesse more damages than are adequate to compensate it for any infringement.

[A damages award should put Finesse in approximately the same financial position that it would have been in had the infringement not occurred, and must be at least what Finesse would have received had it been paid a reasonable royalty for the use of its patent. The damages you are to award, if any, are meant to compensate Finesse and not to punish AT&T. You may not include in your award any additional amount as a fine or penalty above what is necessary to fully compensate the patent-holder for the infringement.[19] [20]

### 8.1.1.    Indemnity[21]

You have heard testimony that Nokia is participating in this trial because it has

---

[19]   Trial Transcript, *Rembrandt,* at 35:6-11, 36:19-22 (modified).

[20]   **Plaintiff's position**:  This language is redundant and confusing.  The prior paragraph already discusses adequate compensation of Finesse.  Further, as explained previously, the jury here is not charged with considering willfulness, so references to punishment, fines, or penalties may distract the jury from the issues.  The existing language suffices to clearly explain to the jury their task.  No addition is necessary here.

[21]   **Defendant's Position**:  This new instruction, first proposed by Finesse on January 11, 2023, is prejudicial and irrelevant.  It is improper for the jury instructions to comment on the evidence, and even more so to mischaracterize it as Finesse's proposed instruction has done.  Furthermore, there is no basis to instruct the jury on a definition of "indemnity" untethered to the contractual language, which itself was subject to a limine order requiring the party obtain leave of Court to inquire into the details of the indemnification agreement, see Dkt. 230 at 8, and has not been presented to the jury.  Evidence of indemnification agreements is regularly excluded as irrelevant and unfairly prejudicial. Contentguard Holdings, Inc. v. Amazon.com, Inc., No. 2:13-CV-01112-JRG, 2015 WL 11089490, at *3 (E.D. Tex. Sept. 4, 2015) ("The parties shall not introduce any argument, evidence, testimony, insinuation, reference, or assertion regarding… any defense or indemnification agreement(s) between [defendants]."); Ziilabs Inc., Ltd. v. Samsung Elec. Co. Ltd., No. 2:14-cv-203-JRG-RSP, 2015 WL 13617214, at *3 (E.D. Tex. Oct. 28, 2015) (granting motion in limine "to preclude any 'argument, evidence, testimony, insinuation, reference, or assertion regarding any defense or indemnification agreement(s)'"); TransData, Inc. v. Centerpoint Energy Houston Elec. LLC, No. 6:10CV557 RWS-JDL, 2016 WL 11677492, at *2 (E.D. Tex. July 1, 2016) ("The parties shall not get into any discussion of indemnity agreements.").  For the same reasons, this instruction should not be given to the jury.

intervened at the request of AT&T, with whom it has an indemnity arrangement.  You are instructed that "indemnity" means "a duty to make good any loss, damage, or liability incurred by another."[22]

### 8.2    Reasonable Royalty

Finesse seeks damages in the form of a reasonable royalty.  A reasonable royalty is defined as the money amount Finesse and AT&T would have agreed upon as a license for use of the asserted patents at the time just prior to when infringement began.

I will now instruct you on how to calculate reasonable royalty damages.

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.  A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began.  In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.  In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation and not simply a royalty either party would have preferred.  Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.  Although evidence of the actual profits an alleged infringer made may be used to

---

[22]  **Plaintiff's Position**: *Laserdynamics Inc. v. Acer Am. Corp.*, 209 F.R.D. 388, 391 n. 4 (S.D. Tex. 2002); *EOG Res., Inc. v. F & C Roustabout, LLC*, 2022 U.S. Dist. LEXIS 37406 at *9 (S.D. Tex. 2022).

determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

The law requires that any royalty awarded to Finesse correspond to the value of the alleged inventions within the Accused Products, as distinct from other unpatented features of the Accused Products. This is particularly true where the Accused Products have multiple features and multiple components not covered by the patent or where the Accused Products work in conjunction with other non-patented items. If unpatented features contribute to the Accused Products, you must apportion that value to exclude any value attributable to unpatented features. You must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone. [The reasonable royalty that you determine must be a royalty that would have resulted from the hypothetical negotiation and not simply a royalty that either party would have preferred.][23, 24]

---

[23] **Finesse's Position**: While Defendants cite cases from 2019 and 2020 where the Court used this instruction, Defendants overlook that the Court has not used this instruction in more recent cases where a reasonable royalty was at issue. The reason is clear: the jury is instructed to "consider all the facts known and available to the parties at the time the infringement began," and the parties' respective negotiating stances are part of those facts. Final Jury Instructions at 18-19 (handout to counsel), *KPN v. Ericsson*, No. 2:21-cv-113-JRG (E.D. Tex.); Trial Tr. at 90:20-22, *Seagen, Inc. v. Daiichi Sankyo Co., Ltd.*, No. 2:20-cv-337-JRG, Dkt. 378 (E.D. Tex. Apr. 13, 2022) (same instruction). If a jury were simply to choose a royalty that either party would have preferred, they would be ignoring those other facts and circumstances. A jury with common sense would understand that a hypothetical negotiation is just that—a negotiation, and not one side's insistence. Therefore, the instruction is unnecessary.

[24] **Defendants' position**: This instruction has been used by this Court multiple times before, and is a correct statement of the law. Trial Transcript, at 988:7–10, *Optis Wireless Technology, LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG (E.D. Tex. Aug. 12, 2020), Dkt. 520; Trial Transcript at 27:24–7, *PPS Data, LLC v. Jack Henry & Associates, Inc.*, No. 2:18-cv-00007-JRG, Dkt. 175 (E.D. Tex. Sep. 13, 2019); Trial Transcript at 27:14–17, *United Services Automobile Association v. Wells Fargo Bank, N.A.*, No. 2:18-cv-00245-JRG, Dkt. 335 (E.D. Tex. Nov. 7, 2019).

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. The parties agree that the date of the hypothetical negotiation would occur in 2018.

Some of the kinds of factors that you may consider in determining the reasonable royalty are:

1. The royalties received by the patentee for the licensing of the patents-in-suit, proving or tending to prove an established royalty;

2. The rates paid by the licensee for the use of other patents comparable to the patents-in-suit. Comparable license agreements include those covering the use of the claimed invention or similar technology;

3. The nature and scope of the license, as exclusive or nonexclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

4. The licensor's established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

5. The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business;

6. The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his non-patented items, and the extent of such derivative or convoyed sales;

7. The duration of the patent and the term of the license;

8.  The established profitability of the product made under the patents, its commercial success, and its current popularity;

9.  The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results;

10. The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;

11. The extent to which the infringer has made use of the invention and any evidence probative of the value of that use;

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13. The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

14. The opinion and testimony of qualified experts; and

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been trying reasonably and voluntarily to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable to a prudent patentee who was willing to grant a license.

You may have heard these factors referred to as the "*Georgia-Pacific* factors."  No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which, in your mind, would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

[In determining a reasonable royalty, you may also consider whether AT&T had commercially acceptable non-infringing alternatives to taking a license from Finesse that were available at the time of the hypothetical negotiation and whether that would have affected the reasonable royalty the parties would have agreed upon. A non-infringing alternative is a way of providing the same or comparable functionality or achieving the same or a comparable result that does not require using the asserted claims.[25] You may compare the patented invention to non-infringing alternatives to determine the value of the patented invention, including the utility and advantages of the patent over the old modes or devices, if any, that had been used to achieve similar results.][26]

[Now, the law requires that any damages awarded to Finesse correspond to the value of the alleged inventions within the accused products, as distinct from other unpatented features of the accused product or other factors such as marketing or advertising or Defendants' size or market position. This is particularly true where the accused product has multiple features and multiple

---

[25] **Defendants' position**:  Trial Transcript at 41:3-8, *Rembrandt*, *supra* (modified).  As explained below, Finesse's instruction regarding non-infringing substitutes is inapposite here where lost profits are not at issue.  Defendants instruction on non-infringing alternatives is appropriate to the reasonably royalty at issue here.

[26] **Finesse's position**:  It is not clear whether this entire paragraph or only part of it is intended to cite to *Rembrandt*.  In any event, Finesse disagrees with this description of non-infringing alternative and believes the Court should follow Finesse's suggestion below instead.

components not covered by the patent or where the accused product works in conjunction with other non-patented items.][27], [28]

[Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope.  If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.][29], [30]

[In determining the appropriate royalty base and the appropriate royalty rate, the ultimate combination of both the royalty rate and the royalty base must reflect the value attributable to the patented technology. In other words, the royalty base must be closely tied to the invention. It is

---

[27]  **Defendants' position**: This instruction is directly from recent jury instructions given by this Court. *See e.g.*, Trial Transcript, at 988:11–20, *Optis Wireless Technology, LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG (E.D. Tex. Aug. 12, 2020); Trial Transcript at 27:18–29:4, *United Services Automobile Association v. Wells Fargo Bank, N.A.*, No. 2:18-cv-00245-JRG, Dkt. 335 (E.D. Tex. Nov. 7, 2019).

[28]  **Finesse's position**:  Substantially the same language was copied above from the *KPN v. Ericsson* case.  Final Jury Instructions at 18 (handout to counsel), *KPN v. Ericsson*, No. 2:21-cv-113-JRG (E.D. Tex.); Trial Tr. at 90:8-19, *Seagen, Inc. v. Daiichi Sankyo Co., Ltd.*, No. 2:20-cv-337-JRG, Dkt. 378 (E.D. Tex. Apr. 13, 2022) (same instruction).  Therefore, this paragraph can be deleted as redundant.  To the extent Defendants disagree, they should explain why the *KPN v. Ericsson* instruction is inadequate.

[29]  **Defendants' position**:  Plaintiff removed this sentence from the *KPN v. Ericsson* instructions. It should be included for the sake of clarity and completeness.

[30]  **Finesse's position**:  Plaintiff did not include this sentence from the *KPN v. Ericsson* instructions because it is irrelevant: there is not a comparable license agreement for consideration by the jury. At deposition, Defendants' representatives stated there were not comparable licenses.  Therefore, including this instruction would confuse the jury.

not sufficient to use a royalty base that is too high and then adjust the damages downward by applying a lower royalty rate. Similarly, it is not appropriate to select a royalty base that is too low and then adjust it upward by applying a higher royalty rate. Rather, you must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.[31, 32]]  In determining the amount of damages, if any, you must determine when the damages began.  For the patents-in-suit, damages commence on the date that AT&T first started to infringe the patents, if you determine that AT&T infringes.

### [8.3    Non-Infringing Substitutes[33, 34] ]

[For purposes of determining a reasonable royalty, you may consider whether, at the time of the hypothetical negotiation, there were any acceptable and available non-infringing substitutes to taking a license.]

---

[31]  **Defendants' authority**:  American Intellectual Property Law Association Model Patent Jury Instructions § 10.2.5.5 (2018).

[32]  **Finesse's position**:  This language from AIPLA is redundant of the instructions already proposed by the parties and included in *KPN v. Ericsson*.  Final Jury Instructions at 18 (handout to counsel), *KPN v. Ericsson*, No. 2:21-cv-113-JRG (E.D. Tex.); Trial Tr. at 90:8-19, *Seagen, Inc. v. Daiichi Sankyo Co., Ltd.*, No. 2:20-cv-337-JRG, Dkt. 378 (E.D. Tex. Apr. 13, 2022) (same instruction).  The instructions above already instruct the jury that the royalty must "correspond to the value of the alleged inventions" and requires that the jury apportion the value to exclude value attributable to unpatented features.  Giving these more detailed instructions is unnecessary and may confuse the jury.

[33]  **Finesse's position**: This section is adapted from the Federal Circuit Bar Association's instructions, under B.5.2 ("Lost Profits—Noninfringing Substitutes—Acceptability"), as well as *Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1270 (Fed. Cir. 2008), and *Std. Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991), cited in that section.  The concept of non-infringing alternatives began in the context of lost profits.  The definition of non-infringing alternative is still appropriate for consideration elsewhere, including in the context of reasonable royalty.

[34]  **Defendants' position**:  an instruction adapted from the "Lost Profits" section of the Model Jury Instructions is inappropriate since neither Plaintiff nor Defendants have presented a lost profits theory.  It is undisputed that Finesse does not sell any products or services and therefore cannot lose any profits from infringement.  Further, as courts in this District have recognized, ";acceptable

To be an acceptable, non-infringing substitute, a product must have the advantages of the patented invention that were important to people who purchased an alleged infringer's product.  A non-infringing alternative is not considered an acceptable substitute unless it is acceptable to all purchasers of the infringing product.  In other words, buyers must view the substitute as equivalent to the patented device.  If purchasers of an alleged infringer's product were motivated to buy that product because of features available only from that product, then some other, alternative product is not an acceptable substitute, even if it otherwise competed with an alleged infringer's products.  A non-infringing alternative is not an acceptable substitute if either (1) the purchasers in the marketplace generally were willing to buy the patented product for its advantages, or (2) the specific purchasers of the infringing product purchased on that basis.

\*    \*    \*

Now, with those instructions, we're ready to hear closing arguments from the attorneys in this case.

---

non-infringing alternatives' don't play the same role in a reasonable-royalty determination. Rather, courts consider the *next-best* available alternative, which is not necessarily an 'acceptable' alternative that precludes recovery of lose profits under *Panduit*."  Salazar v. HTC Corp., No. 216CV01096JRGRSP, 2018 WL 2033709, at \*3 (E.D. Tex. Mar. 28, 2018). ‼

**FINAL JURY INSTRUCTIONS (CONTINUED)**

I would now like to provide you with a few final instructions before you begin your deliberations.  You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion.  All parties expect that you will carefully and impartially consider all the evidence, follow the law as I have given it to you, and reach a just verdict regardless of the consequences.

Answer each question in the verdict form based on the facts as you find them to be, following the instructions that the Court has given you on the law.  Do not decide who you think should win this case and then answer the questions accordingly.  Again, I remind you, your answers and your verdict in this case must be unanimous.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.  This is true in patent cases between corporations, partnerships, or individuals.  A patent owner is entitled to protect his rights under the laws of the United States.  This includes bringing suit in a United States District Court for money damages for infringement.  The law recognizes no distinction among types of parties.  All corporations, partnerships, and other organizations stand equal before the law, regardless of size or who owns them, and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you will each have a copy of this charge to take with you.  If you desire to review any of the exhibits which the Court has admitted into evidence, you should advise me by a written note delivered to the Court Security Officer, and I will send that exhibit or exhibits to you.  Once you retire, you should select your Foreperson and conduct your deliberations.  If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial.

After you have reached your verdict, your Foreperson is to fill in on the verdict form in a manner which reflects your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, you should give a message or question written by the Jury Foreperson to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible, either in writing or by having you brought into the courtroom, so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict and I have discharged you, you are not required to talk with anyone about the case unless the Court orders otherwise.

I will now hand the verdict form and eight copies of these instructions to the Court Security Officer to deliver to the jury room.

Ladies and Gentlemen, you may now retire to the jury room to deliberate. We await your verdict.