IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| FINESSE WIRELESS LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| AT&T MOBILITY LLC, | § | CIVIL ACTION NO. 2:21-CV-00316-JRG |
| | § | |
| Defendant, | § | |
| | § | |
| NOKIA OF AMERICA CORPORATION, | § | |
| | § | |
| Intervenor. | § | |

**<u>FINESSE'S OPPOSITION TO DEFENDANTS' RULE 50(B) MOTION FOR
JUDGMENT AS A MATTER OF LAW REGARDING INVALIDITY</u>**

## **TABLE OF CONTENTS**

**Page**

I. FINESSE WAS NOT REQUIRED TO PUT ON REBUTTAL EVIDENCE ...................... 1

II. MR. PROCTOR'S LACK OF CREDIBILITY SUPPORTS THE VERDICT. ................... 2

III. DEFENDANTS FAILED TO SHOW A MOTIVATION TO COMBINE. ......................... 5

IV. DEFENDANTS FAILED TO ADDRESS OVERWHELMING EVIDENCE OF OBJECTIVE INDICIA OF NON-OBVIOUSNESS ..................................................... 7

V. CONCLUSION ................................................................................................................ 9

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Apple Inc. v. Samsung Elecs.*,
    839 F.3d 1034 (Fed. Cir. 2016) ............................................................................. 5, 7, 8, 9

*Core Wireless Licensing v. LG Electronics*,
    880 F.3d 1356 (Fed. Cir. 2018) ...................................................................................1, 2, 5

*DDR Holdings v. Hotels.com*,
    954 F. Supp. 2d 509, 518 (E.D. Tex. 2013), *rev'd on other grounds*, 773 F.3d 1245, 1253
    (Fed. Cir. 2014) .................................................................................................................5

*Gambro Lundia AB v. Baxter Healthcare*,
    110 F.3d 1573 (Fed. Cir. 1997) .........................................................................................9

*Gomez v. St. Jude Med.*,
    442 F.3d 919 (5th Cir. 2006) .............................................................................................1

*Graham v. John Deere Co.*,
    383 U.S. 1 (1966) ...............................................................................................................7

*Hearing Components v. Shure*,
    2009 WL 593836 (E.D. Tex. Mar. 6, 2009) ......................................................................2

*InTouch Techs. v. VGO Commc'ns*,
    751 F.3d 1327 (Fed. Cir. 2014) .........................................................................................9

*KSR Int'l v. Teleflex*,
    550 U.S. 398 (2007) ...........................................................................................................7

*Nat'l Instruments v. Mathworks*,
    2003 WL 24049230 (E.D. Tex. June 23, 2003) .................................................................2

*Papst Licensing v. Samsung Elecs.*,
    403 F. Supp. 3d 571 (E.D. Tex. 2019) ..............................................................................2

*Power Integrations v. Fairchild Semiconductor*,
    711 F.3d 1348 (Fed. Cir. 2013) .........................................................................................7

*Ruiz v. A.B. Chance Co.*,
    234 F.3d 654 (Fed. Cir. 2000) ...........................................................................................9

*Squibb Co v. Teva Pharm.*,
    752 F.3d 967 (Fed. Cir. 2014) ...........................................................................................7

*St. Jude Med. v. Access Closure*,
   729 F.3d 1369 (Fed. Cir. 2013)...........................................................................................2

*Tinnus Enters. v. Telebrands*,
   369 F. Supp. 3d 704 (E.D. Tex. 2019)..................................................................................9

*Transocean Offshore v. Maersk Drilling*,
   699 F.3d 1340 (Fed. Cir. 2012).........................................................................................7, 9

*WBIP v. Kohler*,
   829 F.3d 1317 (Fed. Cir. 2016)............................................................................................8

*X Techs. v. Marvin Text Sys.*,
   719 F.3d 406 (5th Cir. 2013) ............................................................................................2, 5

## TABLE OF ABBREVIATIONS

| Abbreviation | Term |
| --- | --- |
| '134 Patent | U.S. Patent No. 7,346,134 |
| '775 Patent | U.S. Patent No. 9,548,775 |
| AT&T | Defendant AT&T Mobility LLC |
| Defendants | AT&T and Nokia |
| DX | Defendants' Exhibit |
| Finesse | Plaintiff Finesse Wireless, LLC |
| JMOL | Motion for judgment as a matter of law |
| Nokia | Defendant-Intervenor Nokia of America Corporation |
| PIM | Passive intermodulation |
| PIM-C or PIMC | Passive intermodulation cancellation |
| PX | Plaintiff's Exhibit |
| TT | Trial Transcript (*e.g*, 1/10 TT at 1:2-3:4) |

Defendants' JMOL of invalidity attempts to relitigate fact and credibility issues that the jury decided in Finesse's favor. But determining questions of fact and credibility are traditional jury functions, and the Court at JMOL must "resolve all conflicting evidence in favor of [the verdict]." *Gomez v. St. Jude Med.*, 442 F.3d 919, 933 (5th Cir. 2006). Defendants came nowhere near meeting their heavy burden to overcome the presumption of validity: They did not establish any serious motivation to combine the prior art references for their obviousness combinations, sparing mere minutes of trial time to each theory. Their expert also ignored objective indicia of nonobviousness and did not consider the overwhelming evidence presented to the jury through the inventor and other fact witnesses. These deficiencies are fatal to Defendants' motion.[1]

## I.   FINESSE WAS NOT REQUIRED TO PUT ON REBUTTAL EVIDENCE

Defendants complain that (after witnessing Mr. Proctor's inadequate performance at trial) Finesse chose not to call its validity expert, Dr. Nettleton, to offer rebuttal testimony. Mot. at 5-6. Defendants now ask the Court to set aside the jury's verdict based on this alleged lack of "affirmative testimony." *Id.* Black-letter Federal Circuit law forecloses this argument.

In *Core Wireless Licensing v. LG Electronics*, 880 F.3d 1356 (Fed. Cir. 2018), the Federal Circuit held that JMOL of invalidity is not warranted simply "because [the defendant] presented a prima facie case of anticipation and [the patentee] failed to present any affirmative evidence in rebuttal." *Id.* at 1363-64. In *Core Wireless*, the defendant presented its invalidity expert, and the plaintiff cross-examined that expert to demonstrate their opinions were incorrect. The plaintiff did not call its own validity expert in rebuttal. The Federal Circuit adopted the trial court's "observation that the jury was not required 'to give full credit and acceptance to the testimony of [the defense expert]," explaining that "[b]ecause the burden rests with the alleged infringer to present clear and convincing evidence supporting a finding of invalidity, granting

---

[1] Finesse's statement of the JMOL legal standard is in its opposition to JMOL on infringement.

judgment as a matter of law for the party carrying the burden of proof is generally '*reserved for extreme cases*.'" *Id.* at 1364 (quoting *Titan Tire v. Case New Holland*, 566 F.3d 1372, 1376 (Fed. Cir. 2009)) (emphasis added). The Federal Circuit affirmed the trial court's denial of JMOL because "the jury was entitled to evaluate [the defense expert's] testimony and determine whether [the defendant] clearly and convincingly established" invalidity. *Id.*[2]

This is no "extreme case." Here, as in *Core Wireless*, the record evidence more than supports the jury's finding that Defendants did not meet their burden. To overcome the verdict, "[i]t is not enough [for defendants] to say that substantial evidence exists to support a finding of invalidity. The question is whether there is sufficient evidence to support the jury's failure to find invalidity." *Nat'l Instruments v. Mathworks*, 2003 WL 24049230, at *3 (E.D. Tex. June 23, 2003). Moreover, the jury could have evaluated and disregarded all Mr. Proctor's testimony based on his thorough impeachment. *X Techs. v. Marvin Text Sys.*, 719 F.3d 406, 411 (5th Cir. 2013). Therefore, the Court need not credit his testimony in ruling on JMOL. *Id.*

## II.   MR. PROCTOR'S LACK OF CREDIBILITY SUPPORTS THE VERDICT.

This Court has held that a jury could reasonably question the credibility or weight of an invalidity expert's testimony where the expert equivocated and was impeached, even on other matters like claim construction. *See Papst Licensing v. Samsung Elecs.*, 403 F. Supp. 3d 571, 595-96, 600 (E.D. Tex. 2019); *cf. Hearing Components*, 2009 WL 593836 at *2 ("Even where the movant presented an interested witness on an issue . . . the jury might simply have decided that the movant's witness was not credible and/or impeached on cross-examination.").

The jury could have rejected all Mr. Proctor's testimony as he was repeatedly impeached.

---

[2] The Federal Circuit has reaffirmed that ruling. *See, e.g., St. Jude Med. v. Access Closure*, 729 F.3d 1369, 1382 (Fed. Cir. 2013); *see also Hearing Components v. Shure*, 2009 WL 593836, at *2 (E.D. Tex. Mar. 6, 2009) ("a patentee never *must* submit evidence to support a conclusion by a judge or jury that a patent remains valid") (emphasis in original) (citation omitted).

For example, he equivocated about his own resume and admitted he is a defense shill: in 33 cases of testimony, Mr. Proctor has represented plaintiffs only twice and never opined a patent is valid—though he contends each of his *own* many patents are valid. 1/11 TT 282:16-283:25.

In keeping with his defense bias, the jury saw that Mr. Proctor gave differing testimony depending on whether he was questioned by Finesse's or Defendants' counsel:

| On Direct Examination | On Cross-Examination |
|---|---|
| Q. Now, here DX 281 at page 27, this is from the GROOT architecture specification. Can you tell us what this is, referring to at page 27 that we have blown up?<br>A. Yes. So *the red line is a copy of the transmitter signal*....<br><br>1/11 TT 206:4-10 (emphasis added). | Q. *You've labeled a red line there*, transmit signals. Do you see that?<br>A. Yes.<br>Q. And what you've labeled there is a copy of a transmitter signal of a transmitter. Right?<br>A. It's a transmit signal, yes.<br>Q. But *it's the copy of a transmit signal. Correct?*<br>A. *No, it's the transmit signal.*<br><br>1/11 TT 291:1-15 (emphases added). |

Mr. Proctor also tried to argue that the Court's construction of "signal of interest" contained different words than were indisputably on the page:

> Q. Do you recall giving direct testimony maybe two hours ago stating, "What we heard earlier, the signal of interest is the signal, we're trying to receive it. It's the thing we don't have. It's what we want to know. Right? It's the transmission signal from the mobile phone back to the base station, so we're trying to figure that out"—
> …
> Q. "That's what we're interested in." Do you see your testimony from earlier?
> A. Yes.
> Q. … You also testified earlier, "The signal of interest is the signal you don't know that the base station is trying to get from the transmitter of your phone." Did you testify to that earlier?
> A. Yes.
> Q. Mr. Proctor, as between yourself and the Court in terms of the definition of signal of interest, whose definition should the jury apply?
> A. They should, of course, take the Court's construction.
> Q. And the Court's construction can be found on cross examination demo 21. That is the Court's construction of signal of interest, is it not?
> A. It is.

3

> Q. That construction of signal of interest doesn't mention anything about uplink, does it?
> A. Well, it has 'receiver'.
> Q. Does it say the word 'uplink'?
> A. No, it does not.
> Q. Does it say 'signal you're trying to get from the transmitter of your phone'?
> A. No.
> Q. Say anything about the transmitter of your phone; of any phone?
> A. Well, it says 'receiver', and it's trying to receive, so yes, it does, actually.
> Q. I don't see the word 'transmitter' in that construction. Do you?
> A. Well, the word 'transmitter' is not in that.
> Q. 'Phone' isn't in that either.
> A. No.
> Q. Hardly any of the words you used to define signal of interest to the jury in those two slides that I showed you are in the Court's construction, are they?
> A. No.

1/11 TT 296:3-298:2.

The jury also likely noticed Mr. Proctor's lack of attention to the case. First, he attempted to opine on an anticipation theory Defendants had expressly dropped:

> Q. But the Defendants in this case are not asserting anticipation as their validity defense. Right?
> A. Well, on the '775, I put forth an opinion of anticipation for McCalister and obviousness for the combination.
> Q. Do you think that the jury instructions in this case are going to instruct the jury on the issue of anticipation?
> A. I would assume so.
> Q. You want to stake your credibility on that?
> A. I don't – I have not seen the jury instructions, so I'm not making any opinion about that.

1/12 TT 6:13-22; *see* 1/13 TT 14:9-13, 27:21-33:18 (instructing jury on AT&T's invalidity theory, which did not include anticipation). Second, he showed the jury that he was unaware of basic facts underlying his opinions, such as whether the '134 patent had been considered during prosecution of the '775 patent—which he denied before recanting. 1/12 TT 43:25-44:10.

Finally, Mr. Proctor was incredibly evasive. He was cautioned multiple times for trying to avoid answering Finesse's counsel's questions. 1/11 TT 284:9-16; 287:25-288:25; 1/12 TT

4

19:25-20:10. No other witness at trial was called out for their evasiveness to the same extent.

In sum, the jury could reasonably have concluded that Mr. Proctor was not credible. Among other problems, he had not once in his entire long career testified that a patent was valid; he was willing to make completely contrary statements on direct and cross-examination; he refused to answer cross-examination questions directly; he appeared to rely on a claim construction other than that ordered by the Court; and he did not know basic facts about the patents-in-suit, or even which invalidity theories he was at trial to testify about. The jury could therefore have chosen not "to give full credit and acceptance" to Mr. Proctor's testimony. *Core Wireless*, 880 F.3d at 1364. Indeed, given what transpired at trial, the Court should not credit **any** of Mr. Proctor's testimony in ruling on Defendants' JMOL. *X Techs.*, 719 F.3d at 411.

### III.  DEFENDANTS FAILED TO SHOW A MOTIVATION TO COMBINE.

"What a prior art reference teaches and whether a skilled artisan would have been motivated to combine references are questions of fact." *Apple Inc. v. Samsung Elecs.*, 839 F.3d 1034, 1051 (Fed. Cir. 2016). In *DDR Holdings v. Hotels.com*, the Court denied JMOL for obviousness because the jury could have considered the deficiency of the defendant's presentation on motivation. 954 F. Supp. 2d 509, 518 (E.D. Tex. 2013), *rev'd on other grounds*, 773 F.3d 1245, 1253 (Fed. Cir. 2014). So too here. Defendants proved no motivation to combine for either Kim and Bazarjani (for the '134 Patent) or McCallister and Lui (for the '775 Patent).

With respect to Kim and Bazarjani, Mr. Proctor was asked multiple times on direct examination for any motivation to combine, and repeatedly identified the "big one" as "just simply that everything was going digital[.]" 1/11 TT 242:23-244:10, 256:4-6. But Mr. Proctor failed to narrow the wide chasm separating Kim from the '134 Patent: namely, that Kim is entirely analog whereas the '134 Patent is entirely digital. *Compare* DX10 *with* PX3.

Mr. Proctor hoped to narrow the divide by pointing to Bazarjani, which showed "the

5

world was moving towards digital." Mr. Proctor claimed this "would [have] motivated [someone] to make the Kim invention digital." 1/12 TT 8:15-9:1. On cross-examination, however, Mr. Proctor admitted that not only did Kim "deal[] with analog systems" only, it never even "expressly call[s] out [anything] digital" that would motivate a POSITA to look to Bazarjani. And Kim was filed in 1998, one year *after* Bazarjani, which was "out there promoting a digital approach" in 1997—underscoring that this effort must have fallen on Kim's deaf ears. *Id.* 9:2-9. The jury thus heard sufficient testimony on cross-examination to discount or set aside what little motivation to combine Kim and Bazarjani Mr. Proctor identified on direct.

As to McCallister and Lui, Mr. Proctor gave a mere 5 lines of testimony, summarily concluding that "[i]t would be obvious to combine…McCallister [which] is teaching about how to correct [PIM]" with "Lui [which] is describing the mathematics behind it." 1/11 TT 259:19-260:2. But Mr. Proctor failed to identify a single teaching in Lui that would have motivated a skilled artisan to improve upon McCallister in the manner set out by the '775 Patent. Lui says nothing about PIM cancellation; it simply identifies the problem of signals generated by passive nonlinearities ("Over the last forty years, passive IMI has caused serious problems to many communication systems.") and then recommends *site hygiene* to reduce them. DX-40 at 1, 3. That only shows that the underlying problem was recognized for more than fifty years before Mr. Smith developed his solution, confirming that his invention was not obvious.

In short, Lui teaches away from the invention of the '775 Patent and instead teaches the skilled artisan that the way to solve the problem is simply site hygiene—not the digital signal processing disclosed by the '775 Patent. On cross-examination, Mr. Proctor was forced to acknowledge that neither McCallister nor Lui was even in the same field of endeavor as the '775 Patent: McCallister never once mentions "passive" intermodulation, "PIM," PIM "cancellation,"

6

or "power series function," 1/12 TT 14:4-16:8, Lui's "mathematics" was not for addressing "PIM cancellation," and Lui never even uses the word "cancel," *id.* 17:9-18:19. Those admissions were sufficient for the jury to decide that both McCallister and Lui references were too far afield from the '775 Patent to invalidate its claims.

IV. **DEFENDANTS FAILED TO ADDRESS OVERWHELMING EVIDENCE OF OBJECTIVE INDICIA OF NON-OBVIOUSNESS**

Defendants' burden required that they address all four *Graham* factors, including evidence of "any objective indicia of non-obviousness." *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *KSR Int'l v. Teleflex*, 550 U.S. 398, 406 (2007); *Apple*, 839 F.3d at 1048. Where a jury has concluded the claims are not obvious, courts are "bound to assume that the jury resolved the evidence of secondary considerations in favor of [the patent owner]." *Power Integrations v. Fairchild Semiconductor*, 711 F.3d 1348, 1369 (Fed. Cir. 2013). Mr. Proctor simply provided a bald opinion of obviousness, and completely ignored or left unrebutted overwhelming evidence of non-obviousness submitted by Finesse. That evidence included:

**Unexpected results**. Mr. Smith testified that the difference between the results of testing his invention and the closest prior art was at least "32X" improvement—something a skilled artisan would not have expected at the time of the invention. 1/9 TT 226:18-227:18; *Squibb Co v. Teva Pharm.*, 752 F.3d 967, 977 (Fed. Cir. 2014). Mr. Proctor quibbled over whether a 10 dB improvement today would qualify as "unexpected results" but gave no insight to whether that would be true in 2001, *see* 1/11 TT 278:3-16, nor did he dispute Mr. Smith's tests, *id.* 22:1-22.

**Professional approval and industry praise**. Mr. Smith testified that in 2001, Stanford's Prof. Thomas Lee and Berkeley Wireless Research Center's Dr. Gary Kelson both praised the invention as "something totally unique they hadn't seen before," "valid," and "disruptive and elegant." 1/9 TT 232:7-235:8; PX77; *see Transocean Offshore v. Maersk Drilling*, 699 F.3d

1340, 1350-52 (Fed. Cir. 2012); *Apple*, 809 F.3d at 1054. Prof. Lee even offered to sponsor Mr. Smith's entry into Stanford's Ph.D. program based on the solution. 1/9 TT 234:6-235:2.

Mr. Smith also showed his technology to AT&T, Nokia, and Qualcomm 20 years ago. He recalled they were "interested" and "very positive"; none of these companies told him that his invention was old, obvious, not novel, or otherwise no good. *Id.* 243:18-244:12. Defendants' own documents and witnesses admit that PIM-C is a commercial success. For example, Mr. Loddeke testified that PIM-C is activated on 60,000 Nokia radios across AT&T's network, and AT&T has demanded that Ericsson add the same PIM-C functionality to next-generation radios. 1/10 TT 275:5-282:18, 289:5-291:6; PX715; PX991; PX582; PX669; PX672R; PX674; PX678; PX690. *See WBIP v. Kohler*, 829 F.3d 1317, 1331 (Fed. Cir. 2016) (nexus is highly fact-dependent, presumed when accused products embody invention). Other than his evasive answers on cross-examination, Mr. Proctor completely failed to rebut this evidence. 1/11 TT 24:22-27:13.

**Forward citations**. Mr. Smith testified that at least 50 other patents by companies such as Cisco, Qualcomm, Ericsson, Intel, and Motorola cited his patents as prior art. *Id.* 221:22-223:7; Smith Demo. (Dkt. 281-2). Mr. Proctor failed to rebut the understanding that forward citations show industry recognition of the inventions' significance. 1/11 TT 19:10-20:7.

**Departure from accepted wisdom of the art**. In distinguishing the patents-in-suit from the prior art, Mr. Smith testified about three prior art ways to deal with PIM in the cellular industry (site hygiene, spectrum management, and interference filtering) and their shortcomings. 1/9 TT 208:23-212:11. Mr. Smith testified that cancelling interference "without doing damage to the desired signal" represented "intermod cancellation in a different paradigm." *Id.* 204:7-15; 213:5-215:7, 215:13-19. Mr. Proctor failed to rebut this testimony. 1/11 TT 20:15-21:19.

**Long-felt but unmet needs**. Mr. Smith testified that even though the PIM "problem"

was well-known since at least the 1940s, no one until Mr. Smith had been able to solve it using cancellation signal generation methods. 1/9 TT 208:23-209:3. That is further bolstered—rather than contradicted—by Defendants' own Lui article, which Mr. Proctor admits on its face acknowledged the unresolved problem with PIM. DX5 at 1; 1/11 TT 20:15-21:19. In addition, as described above, PIM-C is a commercial success, and AT&T has asked Ericsson for the same functionality. 1/10 TT (Lodekke) 275:5-282:18, 289:5-291:6; PX715; PX991; PX582; PX669; PX672R; PX674; PX678; PX690. Given that "objective indicia may often be the most probative and cogent evidence of nonobviousness in the record," *Gambro Lundia AB v. Baxter Healthcare*, 110 F.3d 1573, 1579 (Fed. Cir. 1997), the jury could properly credit such evidence and reject Defendants' invalidity case; *Apple*, 839 F.3d at 1048-57; *Transocean*, 699 F.3d at 1354.

But Mr. Proctor gave his invalidity opinions without considering all the objective indicia. He did nothing to rebut the evidence of professional acclaim. Nor did he consider the long-felt but unmet need for the patented solution, despite the evidence of his own Lui reference. His own testimony confirmed there was a longstanding need and no solution other than site hygiene, yet he failed to consider how this affected the obviousness analysis. Mr. Proctor explained that "intermodulation distortion had been known for a long time … [a]nd so it does not surprise me and it would not be surprising that people were trying to correct it," 1/11 TT 278:17-21, 279:11-18, but failed to consider why a problem that had been known so long did not result in the inventive solution until five decades later. All this is fatal to Defendants' motion. *See InTouch Techs. v. VGO Commc'ns*, 751 F.3d 1327, 1352 n.8 (Fed. Cir. 2014) ("expert must consider all factors relevant to [ ] ultimate question [of obviousness]"); *Tinnus Enters. v. Telebrands*, 369 F. Supp. 3d 704, 729 (E.D. Tex. 2019); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654 (Fed. Cir. 2000).

## V.     CONCLUSION

Finesse respectfully requests that the Court deny Defendants' JMOL of invalidity.

DATED: March 30, 2023                                    Respectfully submitted,

              By: */s/ Joseph S. Grinstein*
                Joseph S. Grinstein – Lead Counsel
                  Texas State Bar No. 24002188
                  jgrinstein@susmangodfrey.com
                Shawn Blackburn
                  Texas State Bar No. 24089989
                  sblackburn@susmangodfrey.com
                Meng Xi
                  California State Bar No. 280099
                  mxi@susmangodfrey.com
                Megan E. Griffith
                  New York State Bar No. 5544309
                  mgriffith@susmangodfrey.com
                Bryce T. Barcelo
                  Texas State Bar No. 24092081
                  bbarcelo@susmangodfrey.com
                Thomas V. DelRosario
                  Texas State Bar No. 24110645
                  tdelrosario@susmangodfrey.com
                **SUSMAN GODFREY LLP**
                1000 Louisiana Street, Suite 5100
                Houston, TX 77002
                Telephone: (713) 651-9366
                Facsimile: (713) 654-6666

                S. Calvin Capshaw
                  Texas State Bar No. 03783900
                  ccapshaw@capshawlaw.com
                Elizabeth L. DeRieux
                  Texas State Bar No. 05770585
                  ederieux@capshawlaw.com
                **CAPSHAW DERIEUX LLP**
                114 E. Commerce Ave.
                Gladewater, TX 75647
                Telephone (903) 845-5770

                T. John Ward, Jr.
                  Texas State Bar No. 00794818
                  jw@wsfirm.com
                Andrea Fair
                  Texas State Bar No. 24078488
                  andrea@wsfirm.com
                Chad Everingham
                  Texas State Bar No. 00787447

        ce@wsfirm.com
**WARD, SMITH & HILL, PLLC**
PO Box 1231
Longview, Texas 75606
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

**ATTORNEYS FOR PLAINTIFF FINESSE WIRELESS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record are being served this 30th day of March, 2023, with a copy of this document via the Court's ECF system.

By: */s/ Megan Elise Griffith*
     Megan Elise Griffith