# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| FINESSE WIRELESS LLC, § § *Plaintiff*, § § v. § § AT&T MOBILITY LLC, § | CIVIL ACTION NO. 2:21-CV-00316-JRG (LEAD CASE) |
| CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, § § § § *Defendants*. § § | CIVIL ACTION NO. 2:21-CV-00317-JRG (MEMBER CASE) |

## MEMORANDUM OPINION AND ORDER

**I.   INTRODUCTION**

Before the Court is Defendants' Rule 59 Motion for New Trial (the "Motion"). (Dkt. No. 297.) In it, Defendant AT&T Mobility, LLC ("AT&T") and Intervenor-Defendant Nokia of America Corporation ("Nokia") (collectively, "Defendants") move for a new trial. (*See generally, id.*) Plaintiff Finesse Wireless LLC ("Finesse") opposes the Motion. (*See* Dkt. No. 309 at 1.) For the following reasons, the Court finds that the Motion should be **DENIED**.

**II.   BACKGROUND**

Finesse filed a complaint on August 23, 2021, alleging infringement by Defendants of U.S. Patent Number 7,346,134 and U.S. Patent Number 9,578,775 (collectively, the "Asserted Patents"). (*See generally,* Dkt. No. 1.) Specifically, Finesse accused Defendants of using certain infringing cellular base stations. (*See id.*)

A jury trial was held on the Asserted Patents in January of 2023. On January 13, 2023, the jury returned a verdict finding that the Defendants infringed all asserted claims. (Dkt. No. 273 at 4.) Further, the jury found that Defendants had failed to prove that any of the asserted claims were

invalid. (*Id.* at 5.) The jury awarded damages in the form of a lump sum for the remaining life of the patents in the amount of $166,303,391.00. (*Id.* at 6.)

### A. Background of the Technology

Base stations include radios that send and receive signals. A signal that is sent by the radio station is called a downlink signal (*e.g.*, the signal that is sent to a cell phone), and a received signal (*e.g.*, a signal that is received by a cell phone) is called an uplink signal. Sometimes, signals interact with one another to create interference. The resulting interference is sometimes called passive intermodulation ("PIM"). The patents-in-suit describe methods and apparatuses for removing this type of interference. This is known as passive intermodulation cancellation or "PIMC", or "PIM-C".

### B. Background on the Damages Models Presented

At trial, Plaintiff and Defendants each presented a lump sum damages model. Defendants' model was largely based on the cost associated with manually fixing any PIM generated at a base station. Plaintiff's model, on the other hand, was based on the amount of spectrum salvaged by the technology at issue. Another word for spectrum is bandwidth, and cellular communication companies purchase spectrum wherein they can operate. Plaintiff's model is essentially based on the idea that the technology at issue allows AT&T to make better use of its own spectrum.

### III. LEGAL STANDARD

Rule 59 provides that a new trial may be granted on all or part of the issues on which there has been a trial by jury for "any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). Notwithstanding the broad sweep of Rule 59, "courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Metaswitch Networks Ltd. v. Genband US LLC*, 2017 WL

3704760, at *2 (E.D. Tex. Aug. 28, 2017); *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 276 F. Supp. 3d 629, 643 (E.D. Tex. 2017). "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612–13 (5th Cir. 1985); *see also Laxton v. Gap Inc.*, 333 F.3d 572, 586 (5th Cir. 2003) ("A new trial is warranted if the evidence is against the great, and not merely the greater, weight of the evidence."). Furthermore "[u]nless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial . . . the court must disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61.

## IV.  ANALYSIS

### A.  Whether a New Trial on Damages is Warranted

Defendants argue that, for many of the same reasons put forward in their motion for judgment as a matter of law ("JMOL") regarding damages (Dkt. No. 296), the jury award of $166MM is against the great weight of the evidence. (Dkt. No. 297 at 4.) Defendants further argue that Dr. Bazelon should not have been permitted to offer a speculative damages theory based on future infringement. (*Id.* at 2.) Defendants also argue that Dr. Bazelon's opinions should have been excluded because he offered technical opinions he was not qualified to offer. (*Id.* at 3.)

Defendants also argue that the Court made several evidentiary rulings that improperly affected the scope of the damages case. (*Id.*) Defendants argue that the Court improperly excluded AT&T test data from Southern Ohio and New York City which showed that PIM was present at a limited number of sites, and that PIM-C had a modest effect on PIM. (*Id.*) Defendants also argue that the Court improperly excluded evidence demonstrating that Finesse licensed Verizon's use of the accused products in its network for no consideration. (*Id.*) Defendants further contend that the

Court improperly excluded evidence showing that Ericsson entered into a covenant not to sue with respect to certain PIM-C products and this exclusion allowed the jury to reach a much higher damages verdict. (*Id.* (citing *Hinojosa v. Butler*, 547 F.3d 285, 292 (5th Cir. 2008) (remanding for a new trial where excluded evidence prejudiced party)).) Finally, Defendants contend that Plaintiff improperly made repeated references to billions of dollars which prejudiced the Defendants, as discussed in their JMOL of damages. (*Id.* at 4 (citing *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011)).)

In response, Plaintiff argues that Dr. Bazelon's damages model was properly submitted to the jury. (Dkt. No. 309 at 4.) It was not speculative, according to Plaintiff, for Dr. Bazelon to calculate a lump sum using continued infringement at a steady rate, as Finesse's expert also opined on a lump sum model. (*Id.* at 4–5.) Moreover, Plaintiff argues, Defendants have waived this argument because it was not raised at the *Daubert* stage. (*Id.* at 5.) Plaintiff further contends that the Court correctly denied Defendants' motion to strike Dr. Bazelon's opinions. (*Id.* at 5–6.)

Plaintiff also contends that the Court did not err in its evidentiary rulings (*Id.* at 6–10.) Plaintiff argues that the Court correctly excluded testing data produced well after discovery closed, despite Finesse having requested it earlier. (Dkt. No. 309 at 6–7.) Further, Plaintiff argues, Plaintiff's covenants not to sue with Verizon/Ericsson were made in light of the low level of sales of relevant products and were properly excluded. (*Id.* at 8–9.) Plaintiff argues that these are not licenses, they are covenants not to sue, and were properly excluded under FRE 403. (Dkt. No. 309 at 9.) Moreover, Plaintiff contends, Defendants' damages expert did not include the Ericsson covenant in the substantive analysis of his damages report, and did not attempt to supplement his report with the later-executed Verizon covenant. (*Id.*)

Plaintiff argues that Defendants have waived any objection to Finesse's reference to AT&T's purchases of spectrum because it comes from PX-518, an exhibit preadmitted without objection. (*Id.* at 10–11 (citing *Nissho-Iwai Co. v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 619 (5th Cir. 1988) (reversing grant of new trial where complaining party had failed to object)).) Plaintiff argues that *Uniloc* is distinguishable because the court there held that there was no waiver. (*Id.* at 11 (citing 632 F.3d at 1319)).) Plaintiff also incorporates its opposition to Defendant's JMOL regarding damages (Dkt. No. 310) by reference to show that the verdict was not against the great weight of the evidence. (Dkt. No. 309 at 11.)

In reply, Defendants argue that Dr. Bazelon did not offer a proper lump sum theory and Finesse cannot compare Dr. Bazelon to Dr. Becker because Dr. Becker did not use a spectrum valuation theory. (Dkt. No. 316 at 1.) Defendants also argue that Plaintiff's waiver arguments are inapt because Defendants believed that Finesse was going to offer a running royalty opinion up until *voir dire*, and Finesse stated as such in their joint pre-trial order. (*Id.* (citing Dkt. No. 296 at 2–3).) Moreover, Defendants argue that they timely objected to this new theory at trial. (*Id.*)

Defendants further argue that they properly objected to Dr. Bazelon's use of improper assumptions when it filed a motion to strike (that was subsequently denied). (*Id.* at 2–3 (citing Dkt. Nos. 132 at 4-13, 240 at 14–16).) Defendants also repeat that it was improper for the Court to exclude relevant testing demonstrating that Dr. Bazelon's assumptions were wrong. (*Id.* at 3.) The test data was not disclosed prior to close of discovery because it did not exist, Defendants contend. (*Id.*) Further, Defendants contend, it was prejudicial for the Court to exclude this data because no other admitted evidence compared performance of the very same radio with the feature on and the feature off. (*Id.*)

Defendants also contend that excluding the Verizon and Ericsson covenants was highly prejudicial. (*Id.* at 4.) According to Defendants, the statements regarding the volume of sales that Finesse relied upon are not accurate and were presumably added by Finesse to the stipulation. (*Id.*) Instead, Defendants argue, "numerous" units were sold to Verizon, and Verizon did not have to pay Plaintiff a dime for their use. (*Id.*) Moreover, Defendants argue, the fact that Finesse granted Verizon a royalty free license for the exact same products is highly relevant to the question of whether AT&T would pay $166 million for the same rights. (*Id.*)

Defendants then renew their argument that Plaintiff's repeated references to billions in spectrum skewed the verdict in this case. (*Id.* (citing *Uniloc*, 632 F.3d at 1320).) Moreover, Defendants point out that they did challenge Dr. Bazelon's opinions regarding spectrum purchase prices at *Daubert*. (*Id.* (citing 12/15/2022 Hearing Tr. at 44–48).)

In its sur-reply, Plaintiff points out that, indeed, Dr. Becker's opinion is tied to site hygiene and Dr. Bazelon's opinion is tied to spectrum cost, but they both have the same lump sum methodology. (Dkt. No. 327 at 1.) However, Plaintiff argues, Defendants waived such complaints because they did not assert this at *Daubert*. (*Id.* at 1–2.) Plaintiff also argues that Defendants' blanket reference to their entire *Daubert* motion does not sufficiently raise issues for new trial. (*Id.* at 2–3.) Further, Plaintiff argues, Defendants' argument about their late produced test data has already been rejected by the magistrate judge. (*Id.* at 3 (citing Dkt. No. 240 at 11).)

Plaintiff also repeats that the Court properly excluded Finesse's covenants. (*Id.* at 4.) Plaintiff contends that the Verizon covenant only applies to past sales and that Defendants' expert never relied on these covenants in his report. (*Id.*)

Finally, Plaintiff points out that Defendants admit that the $41 billion figure was in a pre-admitted exhibit to which they did not object. (*Id.*) Moreover, Plaintiff argues, the fact that

6

Defendants objected to Dr. Bazelon's model in their *Daubert* motion, and to a different exhibit is irrelevant. (*Id.*) Plaintiff argues that Defendants cannot claim substantial injustice when they failed to object. (*Id.* at 5.)

The Court is not persuaded by Defendants' arguments, and fins that a new trial on damages is not warranted. The Court has denied Defendants' JMOL on damages and, for many of the same reasons specified in that order, finds that the jury verdict was neither against the great weight of the evidence nor unsupported by substantial evidence. Further, the Court finds that Defendants' arguments regarding Dr. Bazelon's methodology do not show that there was clear or manifest injustice. Defendants had the opportunity to challenge Dr. Bazelon's lump sum opinion at the *Daubert* stage but failed to do so. (*See* Dkt. No. 309 at 5.) Additionally, and as specified in the Court's concurrent order denying Defendant's JMOL on damages, the Court finds that Dr. Bazelon did not testify outside the scope of his expertise or his reports.

Further, the evidentiary rulings complained of do not warrant a new trial. The late-produced tests were properly excluded by the Magistrate Judge, and, this Court properly adopted his rulings. Defendants have not come forward with any new arguments showing why this ruling was incorrect in the first place. *See also*, Fed. R. Civ. P. 61 ("Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial."). Further, the covenants were properly excluded because they applied to low sales numbers, and besides were "covenants," not "licenses." *See also*, *id.* Besides, the experts never relied upon these in their reports.

As discussed in the Court's concurrent order denying Defendant's JMOL regarding damages, the $41B number came from an unobjected to, preadmitted exhibit: PX-518. Defendants' argument that they were surprised that Plaintiff came forward with a lump sum opinion at *voir dire*

despite Plaintiff's representations throughout the case (and even in the joint pre-trial order) was raised for the first time in it's reply brief. The Court will not consider arguments raised for the first time in reply. *Intellectual Ventures II LLC v. Sprint Spectrum, L.P.*, 2019 WL 2959568, at *3 (E.D. Tex. Apr. 18, 2019) (holding that "[i]t is black-letter law that arguments raised for the first time in a reply brief are waived 'as a matter of litigation fairness and procedure.'" (citation omitted)).

Finally, the Court finds that the jury award of $166MM was not against the great weight of the evidence. At trial, Plaintiff and Defendants presented conflicting evidence on the amount of damages due. The jury apparently did not find that Defendants' evidence was credible or that Defendants' evidence undermined Plaintiff's evidence. The jury was entitled to make this determination, and the Court sees no bases to overturn the jury verdict.

### B.  Whether a New Trial on Non-Infringement is Warranted

Defendants argue that a new trial on non-infringement is warranted because infringement of the asserted patent claims is unsupported by substantial evidence, or is against the great weight of the evidence, as explained in their JMOL of noninfringement (Dkt. No. 294). (Dkt. No. 297 at 4 (citing *Georgia-Pacific Corp. v. U.S. Gypsum Co.*, 195 F.3d 1322, 1333, (Fed. Cir. 1999), opinion amended on reh'g, 204 F.3d 1359 (Fed. Cir. 2000) (affirming grant of new trial on infringement where the "jury[']s verdict was not adequately supported by the evidence but the insufficiency of proof was not enough to grant [defendant's] motion for JMOL")).) Defendants also argue, if any claim constructions are to be corrected, then a new trial should ensue. (*Id.* at 4–5.)

In response, Plaintiff argues, there was ample evidence for the jury to find infringement as explained in its opposition to Defendants' JMOL of noninfringement (Dkt. No. 308). (Dkt. No. 309 at 11–12.) Plaintiff argues that claim construction arguments are improper at this stage. (*Id.* at 12 (citing *Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1320-21 (Fed. Cir. 2003)).)

In reply, Defendants again argue that a new trial is warranted because the jury's verdict was against the great weight of the evidence, and because Defendants are not raising any new claim construction arguments. (Dkt. No. 316 at 5 (citing *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 381 F.3d 1371, 1380–81 (Fed. Cir. 2004) (ruling that the district court erred in its claim construction and that a new trial on the issue of infringement was required)).)

In its sur-reply, Plaintiff argues that *Cardiac Pacemakers* is inapposite because it addressed preservation of claim construction issues for appeal where such were raised at the *Markman* stage. (Dkt. No. 327 at 5 (citing *Cardiac Pacemakers*, 381 F.3d at 1380).) Plaintiff also argues that Defendants did not object to the presentation of the claim constructions to the jury, so their argument here is waived. (*Id.* (citing *HP*, 340 F.3d at 1320).)

The Court is not persuaded by Defendants' arguments. As explained in the Court's companion order denying Defendants' JMOL of noninfringement, the jury's finding of infringement was supported by substantial evidence. Accordingly, the jury's finding was not against the great weight of the evidence. As also explained in the Court's order denying Defendants' JMOL of noninfringement, the Court finds that there are no new claim constructions which should be corrected. *See HP*, 340 F.3d at 1320–21. Further, *Cardiac Pacemakers* is thus inapplicable. *See* 381 F.3d at 1383. Accordingly, a new trial on infringement is not warranted.

### C. Whether a New Trial on Invalidity is Warranted

Defendants argue that a new trial on invalidity is warranted because the jury verdict that the patents are not invalid goes against the great weight of the evidence, or is entirely unsupported by the evidence, as explained in their motion for JMOL of invalidity (Dkt. No. 295). (Dkt. No. 297 at 5 (citing *CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1176 (Fed. Cir. 2005)).) Defendants argue, if the Court grants a new trial on infringement, it should also order a new trial on invalidity. (*Id.*) Defendants point out that their expert explained that Defendants do not infringe

9

the asserted patents but that, to the extent the claims were stretched to read on Nokia's products, that they were necessarily invalid. (*Id.* (citing Dkt. No. 284, 1/11/2023 Trial Tr., at 273:9–12; 266:3–6; 238:23–25.) Defendants say a single jury should decide these overlapping issues. (*Id.* at 5–6 (citing *Witco Chem. Corp. v. Peachtree Doors, Inc.*, 787 F.2d 1545, 1549 (Fed. Cir. 1986) ("[I]t is inappropriate ... to have one jury return a verdict on the validity, [and] enforceability ... questions while leaving the infringement questions to a second jury .... [T]he arguments against infringement are indistinguishably woven with the factual underpinnings of the validity and enforceability determinations.")).)

In response Plaintiff argues that there was sufficient evidence to support the jury's failure to find that Defendants had shown invalidity because of the reasons presented in Defendants' opposition to JMOL of non-infringement (Dkt. No. 307). (Dkt. No. 309 at 13–14 (citing *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 2016 WL 4440255, at *9 (E.D. Tex. Aug. 23, 2016)).)

In reply, Defendants argue that there is not "sufficient evidence to support the jury's failure to find invalidity" because Plaintiff did not impeach Defendants' invalidity expert, Mr. Proctor. (Dkt. No. 316 at 5 (citing *Nat'l Instruments v. Mathworks*, 2003 WL 24049230, at *3 (E.D. Tex. June 23, 2003)).)

In Plaintiff's sur-reply, it argues that Mr. Proctor was impeached, and that Defendants did not rebut Plaintiff's evidence of secondary consideration nor show motivation to combine. (Dkt. No. 327 at 5.)

The Court is not persuaded that a new trial on invalidity is warranted. As explained in the concurrent order denying Defendants' motion for JMOL of invalidity, the jury apparently chose

10

not to credit Defendants' expert, who was impeached.[1] The jury found that Defendants did not meet their burden, and the Court sees no reason not to let that determination stand.

### D.  Whether the Jury Instructions Warrant a New Trial

Defendants argue that a new trial is warranted because the Court provided jury instructions and verdict form questions that were legally erroneous and prejudicial, over Defendants' objections. (Dkt. No. 297 at 6.) Specifically, Defendants argue, the instructions were erroneous because they suggested that the lump sum could be determined based on evidence at the time of the verdict rather than based on what the parties would have agreed to at the time of hypothetical negotiation. (*Id.* (citing Dkt. No. 285 (hereinafter "1/12/2023 Trial Tr.") at 191:16–193:16, 196:18–197:4; *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1335 (Fed. Cir. 2009)).)

In response, Plaintiff argues that the jury instructions were proper. (Dkt. No. 309 at 2.) Indeed, Plaintiff argues, Defendants fail to explain how their jury instruction would be any different. (*Id.* at 2–3.) The Court's instruction was:

> [A] lump-sum royalty is when the infringer pays a single price for a license covering both past and future infringement. If you decide that a lump sum is appropriate, then the damages you award, if any, should reflect the total amount necessary to compensate Finesse for AT&T's infringement through the life of the patents.

(*See id.* at 2.) The Defendants only objected to the second sentence in the instruction above. (*Id.*) Defendants' proposed instruction was:

> A lump sum payment is equal to an amount that the alleged infringer would have paid at the time of a hypothetical negotiation for a license covering all sales of the licensed product, both past and future. When a lump sum [is] paid, the infringer pays a single price for a license covering both past and future infringing sales.

---

[1] Nowhere is failure to impeach a defense expert witness a stand-alone basis to grant a new validity trial. Defendants' invalidity case requires they persuade the jury by clear and convincing evidence. If, when, and how their expert is impeached may be a part of the process of persuading the jury, but it is not some essential element in and of itself such that failure to impeach equals a right to a new trial on validity.

(*Id.* at 2–3.) Plaintiff contends that Defendants do not explain (1) how their proposal differs from the Court's instruction, and (2) how the Court's instruction is inconsistent with the law (*Id.* at 3.)

Plaintiff also argues that the verdict form was proper and corresponded to Defendants' proposed verdict form. (*Id.*)

| Verdict Form (Dkt. 272), at 6. | Defs' Proposed Form (Dkt. 221-9), at 7. |
|---|---|
| Answer Question No. 3 ONLY as to any Asserted Claim that you have found in Question Nos. 1 and 2 to be BOTH infringed AND not invalid. | Answer Question No. 4 ONLY as to any Asserted Claim that you have found BOTH to be infringed AND not invalid. |
| **QUESTION NO. 3**<br>What sum of money, if paid now in cash, has the Plaintiff proven by a preponderance of the evidence would compensate Plaintiff for Defendant's infringement of the patents-in-suit?<br><br>Answer in United States Dollars and Cents, if any:<br><br>$ 166,303,391<br><br>The above sum of money you have awarded is [choose only one]:<br>   ✓ A lump sum royalty for the life of the patent(s)<br>   ___ A running royalty through December 2022 | **QUESTION NO. 4**<br>What amount, if any, of royalty damages has Finesse, the Plaintiff, proven by a preponderance of the evidence that [AT&T / Verizon] would compensate Plaintiff for the infringement that you have found? Please indicate whether the amount, if any, is intended to represent either a lump sum royalty for the life of the patent or a running royalty through 2022.<br><br>Answer in United States Dollars and Cents, if any:<br><br>$ _____<br><br>Do you intend for the amount identified above to reflect (PLEASE CHECK ONE):<br>   ___ A lump sum royalty for the life of the patent(s)<br>   ___ A running royalty through 2022 |

(*Id.* at 4.) Moreover, Plaintiff argues, there is no substantive difference between the verdict form the Court used and the verdict form proposed by the Defendants. (*Id.* at 3.)

In reply, Defendants argue that the jury instruction on a lump sum award was legally erroneous because the instructions (1) improperly suggested that the lump sum could be determined based on speculation regarding AT&T's future use of the accused technology rather than based on what the parties would have agreed to at the time of the hypothetical negotiation, and (2) improperly suggested that the jury should "compensate Finesse" for past and future infringement (rather than the proper analysis of what would the defendant have paid, in the past, and whether it would have been a one-time payment to cover the life of the patents). (Dkt. No. 316

12

at 2 (citing *Lucent*, 580 F.3d at 1335; *Allergan Sales, LLC v. UCB, Inc.*, 2016 WL 8222619, at *1 (E.D. Tex. Nov. 7, 2016) ("Both a running royalty and a lump sum royalty, however, compensate the patent holder for loss resulting from infringement that has already happened.")).)

In Plaintiff's sur-reply, it argues that there was no error in the lump sum jury instructions. (Dkt. No. 327 at 2.) Specifically, Plaintiff argues that the jury instruction complied with the law by requiring lump sums to compensate for past and future infringement. (*Id.*) Defendants did not object to this. (*Id.* (citing 1/12/2023 Trial Tr. at 190:25–191:5 ("The objection is concerning the language … 'However, a lump sum royalty is when the infringer pays a single price for a license covering both past and future infringing sales.' We contend that that language actually – I'm sorry. That language is okay.")).)

The Court is not persuaded by Defendants' arguments. Defendants objected to the following portion of the Court's jury instructions: "If you decide that a lump sum is appropriate, then the damages you award, if any, should reflect the total amount necessary to compensate Finesse for AT&T's infringement through the life of the patents." (*See* Dkt. No. 309 at 2.) There was neither legal error nor prejudice in the Court's instruction. Both the Court's instruction and Defendants' proposed instructed included a provision that a lump sum agreement covered past and future infringement. (*See id.* at 3.) It seems that the only substantive difference between the two was the inclusion of a specific instruction that "a lump sum payment is equal to an amount that the alleged infringer would have paid at ***the time of a hypothetical negotiation***." (*See id.* (emphasis supplied).) However, the Court elsewhere instructed the jury that:

> A reasonable royalty ***is the amount of royalty payment that a patentholder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time immediately prior to when the infringement first began***. … If you find Finesse is entitled to damages, you must decide whether the parties would have agreed to a running royalty or a ***fully paid-up lump-sum royalty at the time of the hypothetical negotiation***.

13

(Dkt. No. 286, 1/13/2023 Trial Tr., at 35:21–36:5 (emphasis supplied).) Thus, the Court finds that there is no substantive difference between the Defendants' proposed instruction and the portion of Court's actual instructions to which Defendants object. Accordingly, there is no prejudice to Defendants, and even if there is any legal error, the Defendants cannot now complain about it. However, there is no legal error. The instructions plainly instruct the jury to determine "what [the Defendants would] have paid in the past, and whether it would have been a one-time payment to cover the life of the patents," as Defendants wish. (Dkt. No. 316 at 2 (citing *Lucent*, 580 F.3d at 1335); *Allergan Sales*, 2016 WL 8222619, at *1).) Finally, Defendants did not object to another instruction containing the same pronouncement of law they now challenge. (1/12/2023 Trial Tr. at 190:25–191:5 ("The objection is concerning the language … 'However, a lump sum royalty is when the infringer pays a single price for a license covering both past and future infringing sales.' We contend that that language actually – I'm sorry. That language is okay.").) As such, this argument has been waived.

Similarly, there is no legal error or prejudice in the verdict form. As a preliminary matter, there is no prejudice because the jury form is substantively identical to the Defendants' proposed jury form. Defendants do not specify what legal error the Court allegedly committed by using a jury form substantively identical to their own, so they have not carried their burden. Accordingly, the Court finds that a new trial is not warranted on the bases of legally erroneous and prejudicial jury instructions and verdict form.

### E.  Whether a New Trial Should Be Granted on All Issues

Defendants argue that a new trial is warranted on all issues if the Court grants a new trial on a single issue because a single jury should decide all issues, seeing that they overlap. (Dkt. No. 297 at 6–7 (citing *Davidson Oil Country Supply Co. v. Klockner, Inc.*, 917 F.2d 185, 187 (5th Cir.

14

1990) ("[T]he exclusion of all of this evidence created an atmosphere so unreal and so prejudicial that it requires, in our very essential broad discretion, that all issues ... be remanded for a full retrial.")).) In response, Plaintiff argues that a new trial on any issue would be inappropriate because Defendants have failed to justify why a new trial is needed on any issue. (Dkt. No. 309 at 14.)

As described above, the Court finds that a new trial is not warranted on any issue. A new trial is not warranted on any specific ground raised by the Defendants, and likewise a new trial on all issues tried to the jury is also not warranted.

V.  CONCLUSION

For the foregoing reasons, the Motion (Dkt. No. 297) should be and hereby is **DENIED**.

**So ORDERED and SIGNED this 29th day of August, 2023.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE